103 N.J. Super. 127 (1968)
246 A.2d 731
VICTORIA A. HILL, PLAINTIFF, LOUISE C. HILL; VERNON E. DAVIS, JR. AND JAMES CROSBY DAVIS, MINORS BY THEIR FATHER AND GUARDIAN AD LITEM, VERNON EARL DAVIS AND VERNON EARL DAVIS, IN HIS OWN RIGHT, PLAINTIFFS-RESPONDENTS,
v.
FREDERICK O. MACOMBER; CHARLES C. HILL, ADMINISTRATOR c.t.a. OF ESTATE OF CROSBY M. HILL, DECEASED, DEFENDANTS-RESPONDENTS, AND ALBERT E. BARRY, DEFENDANT-APPELLANT. CHARLES C. HILL, ADMINISTRATOR c.t.a. OF THE ESTATE OF CROSBY M. HILL, DECEASED, PLAINTIFF-RESPONDENT,
v.
FREDERICK O. MACOMBER, DEFENDANT-RESPONDENT, AND ALBERT E. BARRY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 9, 1968.
Decided October 1, 1968.
*129 Before Judges CONFORD, KILKENNY and MINTZ.
Mr. Maurice Y. Cole, Jr., argued the cause for appellant (Messrs. Cole, Koury, Cole & Tighe, attorneys).
Mr. Gerald Weinstein argued the cause for respondent Frederick O. Macomber (Messrs. Lloyd, Megargee, Steedle, Weinstein & Horn, attorneys).
Mr. Donald R. Taggart argued the cause for respondents, Louise C. Hill, Vernon E. Davis, Jr. and James Crosby Davis.
*130 Mr. Michael D. Varbalow argued the cause for respondent Charles C. Hill, administrator c.t.a. of Estate of Crosby M. Hill, deceased.
The opinion of the court was delivered by KILKENNY, J.A.D.
Trial of these consolidated personal injury and death actions resulted in substantial verdicts in favor of plaintiffs and against defendants Macomber and Barry, except that the $7,500 verdict in favor of Victoria A. Hill is against Macomber alone. Barry's motion for a new trial was denied. Barry appeals from the judgment based on the verdicts against him.
Macomber has not appealed. His position on this appeal is that the trial court did not commit error and the judgment should be affirmed.
We reserved, pending oral argument of the appeal, a motion to dismiss Barry's appeal made by plaintiff Charles C. Hill, administrator c.t.a. of the estate of Crosby M. Hill, deceased. We now deny that motion. We are satisfied that the technical objection as to the caption of Barry's notice of appeal, in which the title of the consolidated action brought by movant was not mentioned, does not deprive this court of jurisdiction to hear Barry's appeal from the judgment in that case or warrant dismissal of his appeal from the result of that action. The movant was timely served with the notice of appeal. In the body of the notice of appeal it is clearly manifested that Barry is appealing "from the whole of the final judgment entered * * * on October 9, 1967" in favor of the several plaintiffs named, including expressly "Charles C. Hill, administrator c.t.a. of the estate of Crosby M. Hill, deceased." The specified judgment, generally captioned the same as that on Barry's notice of appeal, included the awards in favor of the plaintiff representative of the estate as to both claims made by him.
We touch briefly on the broad outlines of this three-car, successive collision accident to put the issues in proper perspective.
*131 On February 28, 1965, a clear dry day, about 6:50 P.M., Crosby Hill was driving his automobile south on Route 50 near Mays Landing, New Jersey. His daughter Victoria, then about 21 years old, was in the right front passenger seat and was holding her two-year-old nephew James Davis on her lap. Louise Hill, Crosby's wife, and his other grandson, seven-year-old Vernon E. Davis, Jr., were in the rear of the car, with Louise on the left and Vernon on the right. There was testimony that at that time and place an automobile operated by defendant Macomber northerly along Route 50 veered across the white line separating the northbound and southbound traffic and struck the Hill car head-on in the southbound lane. Both vehicles were then traveling at a speed of 40 to 50 miles per hour.
The impact between the Hill and Macomber cars was undoubtedly a heavy one. The lack of skidmarks in the roadway, the speed at which each vehicle was traveling before they met head-on, the physical damage to the front of each car as demonstrated by the photographs in evidence, and the debris in the southbound lane of Rout 50 left by the collision  all attest thereto. Trooper Bellarosa of the State Police was at the Mays Landing barracks at about 6:50 P.M. on that Sunday evening, about a mile or a mile and a half away and, as he testified, he heard a crash and went down the road to investigate the accident.
Following the initial impact, Victoria Hill unfastened her seat belt and got out of the car. She started to the back of her father's car when there was "another heavy crash," according to her testimony. She stood for a few seconds until she gathered herself together and then went back to her car to find James. In her words, "he was hanging out of the car with his head out and his feet on the seat." He had not been in that position when she left the car. She took him up and started down the street for help when a man came up. Trooper Bellarosa was right behind him. She was then taken by ambulance to the hospital.
*132 In that short interval while Victoria was out of her father's car  a matter of a few minutes at most  Barry, also proceeding northerly on Route 50, drove his automobile into Macomber's disabled car, striking its left rear with the right front of Barry's. The path Barry's automobile traveled after striking the Macomber vehicle was not testified to by any eyewitness. But when the trooper came upon the scene within minutes of the accident he observed and testified to the location of all three cars.
According to Trooper Bellarosa, the rear end of the Macomber car was in the southbound lane; the vehicle was facing in a westerly direction at a right angle, and part of it protruded on the shoulder. No portion of Macomber's automobile was then in the northbound lane. The Hill car was at least partially off the road, on the shoulder of the road against or near a telephone pole, as we understand the record. Barry's automobile was resting against Hill's vehicle. In the trooper's words, "they were intermingled. There was damage to the right front of the Hill vehicle and it was actually interlocked with the left front door of the Barry vehicle. * * * It was intermingled so that the wrecker had to take them apart." (Emphasis added)
Barry's argument on appeal does not challenge the jury's finding that he was negligent. Indeed, there was ample evidence to support such a finding. He, as well as Macomber, had been in each other's company and had been drinking before the accident. The trooper detected a "strong odor of alcohol" about both Barry and Macomber at the scene. The jury could find in Barry's own recital of the happening enough to predicate a finding of negligence on his part.
Rather, Barry's primary contention is that there was insufficient proof to show that his alleged negligence was a proximate cause of the injuries to plaintiffs. He claims error in the trial court's refusal to grant his motion to dismiss on that ground.
*133 Since Victoria's injuries were entirely the result of the first impact between the Hill and Macomber automobiles  she alone was outside her father's car at the time of the second, successive collision  the trial court properly limited her right to recovery against Macomber. Nobody questions that trial ruling. Barry's argument is restricted to the other persons who were still in Hill's car when the second collision occurred. Barry maintains that the first Macomber-Hill impact was solely responsible for the injuries, or in the alternative, the jury should have apportioned the damages between the two incidents.
The jury could properly find from the evidence that Barry's car collided with Hill's automobile and this impact was a substantial one. The trooper testified that the Barry and Hill vehicles were "intermingled" and so "actually inter-locked * * * that the wrecker had to take them apart," and that his study of the accident scene and investigation led him to the conclusion that the impact between those vehicles was "heavy." To this may be added Victoria's testimony that the child, whom she had left in the car, was seemingly half-propelled out of the car following the second crash.
We are mindful of Barry's argument that both Victoria Hill and Vernon Davis, Jr. gave testimony from which a jury could find that the Barry-Hill impact was not severe. Victoria testified that after the second crash she did not observe any movement in her father's car, even though she was standing outside it and only an arm's length away. The boy testified that he felt only a "jerk" after the second crash. However, it was for the jury to decide from all the evidence whether the Hill-Barry impact was severe enough to be causative of or contributory to the injuries sustained by the persons who remained in the Hill vehicle following the Hill-Macomber crash.
The real difficulty in the case stems from the absence of proof as to what injuries were suffered in each collision. The Macomber-Hill collision could have caused all the injuries *134 sustained by plaintiffs. In the case of Victoria Hill, it did. In that instance, recovery by her was properly against Macomber alone, as noted above. But as to the other injured plaintiffs, circumstances precluded testimony by them as to what injuries were first caused by Macomber's negligence as contrasted with those successively caused by Barry's negligence. Crosby Hill never regained consciousness after the first collision with Macomber and died four hours later at the hospital. Louise Hill suffered amnesia following the initial impact and was unable to give helpful testimony. Victoria Hill gave no testimony as to the injuries sustained by the several passengers in the Hill car, other than those relating to herself. The two-year-old boy, James Davis, was too young to testify. His seven-year-old brother, Vernon, gave very limited testimony, none of which attempted to separate his injuries between the two collisions with the Hill vehicle.
Neither Macomber nor Barry testified to the injuries sustained by the passengers in the Hill automobile. This was due to their own dazed condition and injuries.
There was medical testimony as to the nature and extent of the injuries sustained by the several persons in Hill's automobile, but there was no allocation of the injuries to the first collision of the Macomber and Hill cars, or of those resulting from the collision of the Barry and Hill automobiles.
Crosby Hill died as the result of "multiple injuries." These included a crushed chest, "hemothorax," multiple fractured ribs on the right side, "pneumo-thorax," a head injury and various internal injuries. The steering wheel, behind which Hill had been sitting, was broken and this probably caused decedent's flailed chest. There was no proof that the first collision caused the steering wheel to be broken. That this happened might very well be. Dr. Foris, who attended Hill at the hospital when he was in a coma, concluded that Hill died as a result of the multiple injuries, and not just because of his chest injuries.
*135 Dr. Godfrey asserted in response to a hypothetical question that two blows would be more likely to produce severe damage than would one, because of the damage already sustained as a result of the first impact. He agreed that a minor bump or simple jerk. would not tend to cause the effects seen on the decedent.
We need not detail the injuries suffered by the other plaintiffs. They were serious in each instance. As in the case of decedent, a severe blow or severe blows would be needed to cause them. Beyond their opinion that forceful impacts were necessary, the doctors were not able to separate the injuries or their end results and attribute them to the first collision rather than to the later one. If these medical experts were not able to do so, it follows that a jury could not reasonably do so. Any attempt on its part to apportion the damages would reduce itself to sheer speculation.
The trial judge properly denied Barry's motion to dismiss, based as it was on the ground that plaintiffs had failed to prove that his negligence was the proximate cause of the injuries to plaintiffs. Whether proximate cause exists is simply "a question of whether the ordinary mind, guided by logic, common sense, justice, policy and precedent, would consider that cause appears in a cause-and-effect context." Miehl v. Darpino, 99 N.J. Super. 1, 9 (App. Div. 1968). "Where there is a factual dispute as to the events and circumstances which caused the injuries, proximate cause is a jury question." Melone v. Jersey Central Power & Light Co., 18 N.J. 163, 175 (1955).
The trial judge had instructed the jury as to Barry's claim that plaintiffs' injuries resulted from the initial collision between the Hill and Macomber automobiles, and not from any negligence on his part. The jurors were told that plaintiffs had the burden of proving by the greater weight of the credible evidence not only that Barry was negligent, but also that there was a proximate causal relationship between that negligence and the injuries. They were instructed that, if more than one defendant was negligent, there could *136 be no recovery against one deemed to be negligent, "if his negligence was not a substantial factor in producing the accident or injuries."
To insure a correct verdict, the court submitted interrogatories to be answered by the jury. The answers demonstrated its finding that Macomber and Barry were each guilty of negligence, and that the negligence of each  except as to Victoria  was a proximate cause of the accident and injuries.
Barry's main claim is that the jury should have been given the opportunity to apportion the damages between him and Macomber, holding him liable only for the damage specifically caused by, or the aggravation of injury resulting from negligence on his part. The difficulty with Barry's position is that the jury could not find from the evidence before it any valid basis for an apportioning of damages, or for calculating the factor of aggravation, absent proof of the nature and extent of injuries pre-existing which were aggravated by the second collision.
The majority view in our country in cases similar to the instant one, where there are collisions in rapid succession producing a single end result, and no proof as to what damage was separately caused by each collision, is to hold both tortfeasors jointly and severally responsible. See Annotation, 100 A.L.R.2d 16 (1965). Although concurrent tortfeasors generally are not jointly and severally liable where their acts caused distinct and separate injuries, or where some reasonable means of apportioning the damages is evident, the negligent driver of the automobile in the successive impact has been held jointly and severally liable for all of plaintiff's injuries, if the injuries are "indivisible" and the liability therefor cannot be allocated with reasonable certainty to the successive collisions. This has come to be known as the "single indivisible injury" rule. For some cases in which it was applied, see Maddux v. Donaldson, 362 Mich. 425, 108 N.W.2d 33, 100 A.L.R.2d 1 (Sup. Ct. 1961); Holtz v. Holder, 101 Ariz. 247, 418 p.2d 584 (Sup. *137 Ct. 1966); Berryman v. People's Motor Bus Co., 228 Mo. App. 1032, 54 S.W.2d 747 (Ct. App. 1932); Brantley v. Couch, 383 S.W.2d 307 (Mo. Ct. App. 1964).
This doctrine is more conducive to justice than the old rule which precluded all recovery simply because plaintiff was unable to prove what damage each of two or more tortfeasors did. See Adams v. Hall, 2 Vt. 9 (Sup. Ct. 1829), where an owner of sheep suffered loss to his flock through the depredation of two dogs, separately owned. In the absence of testimony as to which dog killed which sheep, neither owner was held liable.
In these days of chain collisions, it is better that a plainiff, injured through no fault of his own, should be compensated by both tortfeasors, even though one of them may pay more than his theoretical share of the damage which his wrong has helped to create, than that the injured party have no recovery. Our courts have seemingly favored this more modern policy. See Ristan v. Frantzen, 14 N.J. 455 (1954) and Matthews v. Delaware, L. & W.R.R. Co., 56 N.J.L. 34 (Sup Ct. 1893).
In Restatement, Torts (2d ed. 1965), § 433A provides that damages for harm are to be apportioned among two or more causes where (a) there are distinct harms, or (b) there is a reasonable basis for determining the contribution of each cause to a single harm. That latter approach was not possible here in the light of the evidence before the jury. Section 433B provides that where the tortious conduct of two or more actors has combined to bring about harm to the plaintiff, and one or more actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to apportionment is upon each such actor. The evidence here did not demonstrate any such capability of apportionment. Barry did not sustain the burden required of him. Accordingly, the trial court's rulings on the issues of apportionment and limitation of recovery for mere aggravation were correct.
*138 So, too, we find no basis for reversal in any of the other grounds urged by Barry. The trial court's submission to the jury of its own special interrogatories was a proper exercise of judicial discretion. The rejection of Barry's special interrogatories was also justifiable under all the circumstances.
The judgment is in all respects affirmed.