· 695 A.2d 1364

FRANK A. CAMPIONE, PLAINTIFF–RESPONDENT AND CROSS–APPELLANT, v. LINDA J. SODEN AND MARCIA SACKNOW-ITZ, DEFENDANTS, AND ERIC M. JENSEN AND HANDEX OF NEW JERSEY, DEFENDANTS–APPELLANTS AND CROSS–RE-SPONDENTS.

Argued September 24, 1996—Decided July 9, 1997.

*Richard S. Hyland* argued the cause for appellants and cross-respondents (*Montgomery, McCracken, Walker & Rhoads,* attorneys; *Mr. Hyland* and *Thomas J. Kenney, III,* of counsel).

*Michael D. Schottland* argued the cause for respondent and cross-appellant (*Schottland, Manning & Rosen,* attorneys).

The opinion of the Court was delivered by

STEIN, J.

This appeal primarily concerns the allocation of fault and damages under the Comparative Negligence Act for injuries caused by successive automobile accidents, and the collateral issue whether a trial court that omitted, without objection by either party, one or more critical fact issues from the special verdict form submitted to the jury pursuant to *Rule* 4:39–1, may make factfindings concern-

ing such omitted issues on the basis that the parties' right to a jury trial thereof has been waived.

## I

This is a double-impact motor vehicle accident case. On June 15, 1989, at approximately 11:15 p.m., plaintiff Frank Campione was a passenger in an automobile owned and operated by Linda Soden. The pair was traveling south on Route 9 in Sayreville. It had been a rainy day; the roads were wet.

Soden stopped at a red light. Her car was in the far left lane. Several cars were stopped in front of Soden's vehicle. Almost immediately after the light turned green, Soden's vehicle was rear-ended by a light-duty pickup truck. The truck, driven by Eric Jensen, was owned by Jensen's employer, Handex of New Jersey.

Jensen testified that a car in front of Soden had stopped suddenly, causing Soden to brake abruptly. Soden denied Jensen's allegation. The police report of the accident, however, indicated that Soden told the police that a car had stopped short in front of her vehicle, causing her to brake quickly. Soden testified that the reporting officer had not written what she told him.

After the accident, neither Soden nor Jensen moved their car from the left lane. Instead, they activated their emergency flashers and left their vehicles in the roadway. Jensen, Soden, and Campione all exited the vehicles to inspect for damage. Campione was standing between the Jensen and Soden vehicles when Jensen's truck was rear-ended by a car owned and operated by Marcia Sacknowitz. Both Campione and Soden estimated the time between the two collisions to be less than a minute.

The force of the impact propelled Jensen's truck into Soden's vehicle. Campione's legs were crushed between the two bumpers and he was launched several feet into the air. He landed on his back and head in the middle lane of the highway.

Campione was diagnosed with fractures of both legs, a cervical sprain, a lumbar sprain, a concussion, and a broken tooth, which became infected. He was hospitalized for thirty-one days. After his release, he returned to live with his parents, who cared for him during his rehabilitation. Campione participated in physical therapy to regain the full use of his legs, and received psychiatric treatment.

Campione filed suit against Soden, Jensen, Handex, and Sacknowitz. Soden filed an answer and a crossclaim for contribution and indemnification. Jensen and Handex (Jensen/Handex) filed an answer and crossclaims. Sacknowitz filed only an answer.

At trial, Campione's psychiatrist testified that Campione suffered from post-traumatic stress disorder, secondary depression, and chronic pain. His symptoms included insomnia, nightmares, and sexual dysfunction. The psychiatrist also testified that Campione's injuries, and the resultant limitations on his physical abilities, deprived him of self-esteem. Although Campione had been "a real *bon vivant*" prior to the accident, his post-accident activities and relationships were markedly restricted.

The psychiatrist also testified that Campione's loss of income had contributed to his psychiatric difficulties. Campione testified that his once-busy labor relations firm, Campione Associates, had become practically "nonexistent" after the accident. In response, Jensen/Handex sought to introduce Campione's tax returns to refute a perceived inference that Campione Associates had been a successful venture. Rejecting Jensen/Handex's argument, the trial court noted that Campione had neither attempted to value the business nor sought to assert a lost earnings or lost wage claim.

The accident reconstruction expert hired by Jensen/Handex established that Sacknowitz had an unobstructed line of vision for 255 feet from the stopped vehicles. The expert's unrefuted testimony also indicated that Sacknowitz's vehicle was traveling at approximately 18.5 miles per hour at the time of impact. Sacknowitz testified that she did not see the stopped Jensen/Handex

vehicle until she was fifty feet away. She claimed that she was traveling forty-five miles per hour when she hit the brakes, causing her vehicle to slide into Jensen/Handex's truck.

Concerning Campione's physical injuries, it was conceded at trial that Campione's leg fractures were exclusively attributable to the second impact between Sacknowitz and Jensen/Handex. Although the cause of Campione's leg injuries was undisputed, the source of his back, neck, periodontal, and psychological injuries was vigorously contested. Jensen/Handex argued that all of those injuries were caused by the second impact, while Campione contended that the injuries could not be apportioned between the two accidents. Campione produced medical testimony from a psychiatrist, an orthopedic surgeon, and a dentist, none of whom could pinpoint the source of Campione's injuries. The psychiatrist testified that the psychological injuries could have been caused by the first impact, the second impact, or a combination of both. The orthopedic surgeon and the dentist opined that Campione's substantial neck, back, and dental injuries, respectively, could have been caused by either the first or the second collision. Counsel for Jensen/Handex argued that the first impact was mild; that both Soden and Campione had testified that neither the Jensen/Handex vehicle nor the Soden vehicle had suffered damage due to the first impact; and that immediately after the first accident Campione stated that he was not in pain. Counsel also highlighted testimony from Campione's medical experts that suggested that Campione's injuries were caused by the second, more serious impact.

During the trial, the trial court informed counsel of its intention to require the jury to return a special verdict pursuant to *Rule* 4:39–1, and submitted to counsel a draft of the special verdict form containing the proposed written questions to be answered by the jury. That draft was discussed by the court and counsel at a charge conference at the close of trial. Jensen/Handex's counsel asserts that at the charge conference counsel expressed concern about ambiguities in the draft special verdict form, which the trial

court agreed to address. The final version of the special verdict form prepared by the trial court was apparently submitted to counsel only after the court began charging the jury. The court interrupted its charge midway to hear exceptions to the charge and to review the verdict sheet with counsel. Counsel for both Campione and Jensen/Handex suggested changes to the jury interrogatories. After counsel's commentary, the court gave clarifying instructions concerning specific interrogatories on the verdict form and then concluded its charge.

At the close of evidence, the trial court found as a matter of law that Jensen/Handex was solely responsible for the first impact, dismissing the claims against Soden. At the conclusion of the eleven-day trial, the jury found: (1) Jensen's negligence was a proximate cause of Campione's injuries from the first impact; (2) the first impact was a proximate cause of the second impact; (3) Soden and Jensen were not negligent for failing to remove their vehicles from the roadway; (4) Sacknowitz was 95% responsible for the second impact, and Campione was 5% responsible for his injuries sustained as a result of that impact; (5) no losses occurred exclusively as a result of the first impact; (6) $300,000 in damages occurred exclusively as a result of the second impact; and (7) $450,000 in damages could not be allocated as between the first and second impacts. Notably, the jury interrogatory specifically permitted the jury not to allocate damages between the two impacts.

After the jury was dismissed, counsel and the court noticed two omissions from the final jury verdict form. The verdict form failed to inquire about the percentage of fault attributable to the negligence of Jensen/Handex as a proximate cause of the second impact. Additionally, the form did not adequately inform the jury of its responsibility to attempt to allocate all damages between the two accidents.

The court requested briefs from the parties on how to mold the verdict to accommodate those omissions. As a result of the omitted interrogatories, the trial court, pursuant to *Rule* 4:39–1,

made findings of fact in respect of the omitted issues. The trial court observed that the first impact, for which it had already determined Jensen/Handex to be 100% responsible, was the primary cause of the second impact, noting that the second impact would not have occurred were it not for Jensen/Handex's negligence in striking the rear of the Soden vehicle. Accordingly, the court set aside the jury's findings with regard to the second impact and replaced them with its own, holding Jensen/Handex 60%, Sacknowitz 35%, and Campione 5% responsible for the second collision. The court also allocated 70% of the unallocated damages to Jensen/Handex and 30% to Sacknowitz. The court explained its decision to mold the incomplete verdict:

> A subsequent trial dealing solely with the unresolved issues would necessarily duplicate evidence heard by the jury over the ten day trial. This procedure would be wasteful of the court's resources as well as the time, energy and finances of the litigants. Fairness requires that all aspects of litigation be resolved, if possible in a single proceeding. This principle has greater force now than in the past as it is well known that our courts are struggling to keep pace with the explosion of litigated matters.

> [Citations omitted.]

The trial court imposed joint and several liability on both Jensen/Handex and Sacknowitz for all of plaintiff's damages.

Sacknowitz unsuccessfully moved for a new trial or, alternatively, a remittitur; Jensen/Handex unsuccessfully moved for a new trial only. Jensen/Handex then appealed to the Appellate Division. In an unpublished opinion, that court found that the trial court had improperly dismissed Soden from the suit as a matter of law. The court determined that Soden's alleged admission to the police that she had stopped short raised a fact question, requiring a jury to consider whether the first collision resulted in part from Soden's negligence in stopping suddenly.

Next, the Appellate Division held that the jury verdict was incomplete because the jury did not compare the negligence of all parties responsible for either the first or second impacts pursuant to section 5.2 of the Comparative Negligence Act, *N.J.S.A.* 2A:15–5.1 to –5.3. The court also determined that Jensen/Handex's failure to object to the verdict sheet pursuant to *Rule* 4:39–1 did

not constitute a waiver of the right to have a jury allocate liability. The court held that both counsel and the court were initially unaware of the omissions, and that the absence of an objection to the charge should not prejudice Jensen/Handex.

Turning to the trial court's molded verdict, the Appellate Division found the post-verdict allocation of liability to be "an invasion of the jury's province." Although the court reversed the liability aspects of the molded judgment, it preserved several of the jury's determinations. The Appellate Division did not disturb the following jury findings: (1) the first impact was a proximate cause of the second; (2) Sacknowitz's conduct was negligent and a proximate cause of the second impact; and (3) Campione was negligent and a proximate cause of his injuries resulting from the second impact.

The Appellate Division also declined to set aside the jury's damage awards. The court directed that the $300,000 awarded for injuries attributable to the second impact be allocated "according to the percentages to be decided by the jury on remand." Concerning the $450,000 in unallocated damages, the court held each responsible defendant jointly and severally liable. Citing *Hill v. Macomber*, 103 *N.J.Super.* 127, 136, 246 *A.*2d 731 (App.Div.1968), the court determined that joint and several liability is appropriate in successive-impact cases if the injuries are indivisible and cannot be allocated with reasonable certainty. Finally, the court dismissed as meritless Jensen/Handex's claim that the trial court erred in refusing to admit Campione's tax returns.

Jensen/Handex moved for reconsideration because of the Appellate Division's failure to apply the provisions of the Comparative Negligence Act to the unallocated damages. Jensen/Handex also argued, once again, that the trial court erred in not allowing Campione's tax returns to be introduced at trial. The Appellate Division issued a supplemental opinion. The modified opinion held each responsible defendant liable for a share of the $450,000 award, and indicated that "[t]he share to be recovered from each defendant is to be determined pursuant to *N.J.S.A.* 2A:15–5.2." However, the opinion continued to specify that "[a]ll parties

responsible for either the first or second impact are jointly and severally liable for the $450,000 award." The court declined to change its disposition concerning the admissibility of Campione's tax returns.

Jensen/Handex filed a petition for certification contesting the Appellate Division's imposition on it of joint and several liability for the unallocated damages and the exclusion from evidence of Campione's tax returns. Campione filed a cross-petition, asserting that Jensen/Handex's failure to object to the special verdict sheet constituted a waiver, pursuant to *Rule* 4:39–1, of the right to have the jury apportion fault for the second accident, and that the Appellate Division erred in reversing the trial court's grant of judgment in favor of Soden. We granted certification on Jensen/Handex's petition. Initially, we denied Campione's cross-petition. 143 *N.J.* 517, 673 *A.*2d 276 (1995). Subsequently, having reconsidered our order of denial, we vacated that order and granted the cross-petition. 151 *N.J.* 64, 697 *A.*2d 540 (1997).

## II

### A

The Legislature enacted the Comparative Negligence Act (Act), *L.* 1987, *c.* 146, to ameliorate the harsh results attendant to the common-law doctrine of contributory negligence. *Ostrowski v. Azzara*, 111 *N.J.* 429, 437, 545 *A.*2d 148 (1988). That doctrine foreclosed recovery for any plaintiff found even marginally responsible for his or her injuries. *Blazovic v. Andrich*, 124 *N.J.* 90, 97, 590 *A.*2d 222 (1991). Instead of that "all-or-nothing" approach, the Act permits apportionment of liability relative to fault. *Ibid.* Under the Act, the extent of each party's negligence, in the form of a percentage, is determined by the finder of fact. *N.J.S.A.* 2A:15–5.2b. The court then molds the judgment consonant with those percentages. *N.J.S.A.* 2A:15–5.2c. If a claimant's negligence is equal to or less than that of the defendant, that plaintiff's

recovery is not barred, but merely reduced by his or her percentage of responsibility. *N.J.S.A.* 2A:15–5.1.

In 1987, the Legislature amended the Act and modified joint and several liability. *L.* 1987, *c.* 325; *see* Senate Judiciary Committee, *Statement to Senate Bill No. 2703*, at 1 (Oct. 30, 1986) (indicating specific legislative intent to modify joint and several liability). After those changes, only a defendant determined to be 60% or more responsible for all damages is liable for the entire award. *N.J.S.A.* 2A:15–5.3a. A defendant found more than 20% but less than 60% responsible is liable for all economic damages but for only that percentage of noneconomic damages directly attributable to that defendant. *N.J.S.A.* 2A:15–5.3b. Defendants found 20% or less responsible for damages are liable for only that percentage of the award directly attributable to their negligence.[1] *N.J.S.A.* 2A:15–5.3c. *Hill v. Macomber, supra,* 103 *N.J.Super.* 127, 246 *A.*2d 731, on which the Appellate Division relied in holding that joint and several liability is appropriate in successive-impact cases if the injuries cannot be allocated, would appear to be inconsistent with the Legislature's modification of the common-law rule of joint and several liability.

## B

Although rare, a case may arise where damages cannot be apportioned between two or more accidents. One longstanding judicial response has been to hold each culpable defendant jointly and severally liable for the unapportionable damages. *See, e.g.,* Fowler V. Harper & Fleming James, Jr., *The Law of Torts* § 10.1,

---

[1] The Comparative Negligence Act was amended again by *L.* 1995, *c.* 140, eff. June 29, 1995. Under the amended statute, a party determined to be 60% or more responsible for the total damages is still liable for the entire award. However, a party less than 60% responsible is no longer liable for all economic damages but is liable only for that percentage of economic and noneconomic damages directly attributable to that party's negligence or fault. Because the injuries in this matter were sustained on June 15, 1989, and the judgment was entered prior to June 29, 1995, those amendments do not affect this appeal.

at 4–5 (2d ed.1986) (noting increasing tendency to hold parties jointly and severally responsible for indivisible harms caused by independent but concurring tortious acts); Roy D. Jackson, Jr., *Joint Torts and Several Liability,* 17 *Tex.L.Rev.* 399, 407–08 (1939) (noting that most American jurisdictions have applied joint and several liability where damages are "patent[ly] impossible" to apportion); William L. Prosser, *Joint Torts and Several Liability,* 25 *Cal.L.Rev.* 413, 439 (1937) (noting that, if no logical basis for apportionment of damages exists, joint and several liability applies). At least one jurisdiction has established that a trial judge commits reversible error when he allows a jury to attempt to apportion damages for an "unapportionable" injury. *See Ex parte City of Huntsville,* 456 So.2d 72, 74 (Ala.1984), *overruled on other grounds by Diemert v. City of Mobile,* 474 So.2d 663 (Ala.1985); *see also Brown v. Philadelphia College of Osteopathic Med.,* 449 Pa.Super. 667, 674 A.2d 1130, 1137 (1996) (finding that trial court is to determine as matter of law whether defendants are joint tortfeasors and therefore subject to joint and several liability); *cf. Pure Gas & Chem. Co. v. Cook,* 526 P.2d 986, 989 (Wyo.1974) ("That a jury cannot properly apportion damages between joint tortfeasors has almost universal recognition.").

Taking a different approach, trial courts in Hawaii inform the jury that it is their duty to determine, by a preponderance of the evidence, how much of the plaintiff's damages are attributable to each defendant's negligence. See *Loui v. Oakley,* 50 *Haw.* 260, 438 P.2d 393, 396–97 (1968). If, however, the jury is unable to do so precisely, it may make a "rough apportionment." *Ibid.; see also Jenkins v. Pennsylvania R.R.,* 67 *N.J.L.* 331, 334, 51 A. 704 (E. & A.1902) (finding that if harm is functionally unapportionable and jury does not have adequate information to allocate damages precisely, "the approved practice is to leave it to the good sense of the jury, as reasonable men, to form, from the evidence, the best estimate that can be made under the circumstances...."); Prosser, *supra,* at 439 (noting that difficulty of proof of apportionment is resolved "to some extent by giving the jury a comparatively free hand"). The Court in *Loui, supra,* observed that if the jury is

unable to make even a rough apportionment, it is to apportion damages equally among the various accidents. 438 *P.*2d at 397. We address, *infra* at 183–185, 695 *A.*2d at 1374–1375, the appropriate procedure for a trial court to follow in attempting to allocate damages between successive accidents.

## C

Another significant issue that we must resolve concerns the ability of a trial court to make discrete findings of fact in order to save an incomplete special verdict. We note that the Act contemplates that, in order to apportion liability, the factfinder should compare the fault of all parties whose negligence was a proximate cause of the plaintiff's injuries. *Bendar v. Rosen,* 247 *N.J.Super.* 219, 233, 588 *A.*2d 1264 (App.Div.1991). A necessary precursor to such an apportionment is the submission of clear, accurate, and complete interrogatories to the jury. *See Benson v. Brown,* 276 *N.J.Super.* 553, 564–65, 648 *A.*2d 499 (App.Div.1994) (observing importance of proper framing of jury verdict questions); *Geherty v. Moore,* 238 *N.J.Super.* 463, 474–75, 570 *A.*2d 29 (App.Div.1990) (reminding courts that inartful phrasing of jury questions encourages inconsistent answers and omissions in the verdict). Counsel should be given the opportunity to participate in the preparation of jury interrogatories. *See Benson, supra,* 276 *N.J.Super.* at 565, 648 *A.*2d 499. Attorneys are responsible for advocating that jury interrogatories fairly reflect their clients' factual and legal contentions. *See Dubak v. Burdette Tomlin Mem'l Hosp.,* 233 *N.J.Super.* 441, 457, 559 *A.*2d 424 (App.Div.), *certif. denied,* 117 *N.J.* 48, 563 *A.*2d 817 (1989); *see also Benson, supra,* 276 *N.J.Super.* at 565, 648 *A.*2d 499 (emphasizing that framing of jury questions and interrogatories requires participation by counsel). That duty is particularly pressing if numerous legal issues are presented, *see Dubak, supra,* 233 *N.J.Super.* at 457, 559 *A.*2d 424, and if, as here, proper apportionment of damages is entirely contingent on the jury's answers to interrogatories.

*Rule* 4:39–1 enables trial courts to require juries to return special verdicts in the form of special written findings upon each fact at issue in the case. The rule further provides that "[i]f in doing so the court omits any issue of fact raised by the pleadings ... [t]he court may make a finding as to an omitted issue." *R.* 4:39–1. In this action, the trial court failed to submit two relevant interrogatories to the jury, first, concerning the extent to which the first accident contributed to the second accident, and second, instructing the jury to attempt to apportion the so-called unallocated damages between the two accidents. As a result, the jury rendered a special verdict that failed to account for the precise liability of all parties. After recognizing that error, the trial court, pursuant to *Rule* 4:39–1, made findings of fact concerning the omitted issues.

■ A special verdict is one in which the jury finds all the facts and the court renders a final decision based on those facts. *See Nylander v. Rogers,* 41 *N.J.* 236, 240–41, 196 *A.*2d 1 (1963). A special verdict containing findings on all material factual issues in the case is rendered in lieu of a general verdict. Special verdicts are helpful to a jury because, by identifying each critical fact to be resolved, they clarify and simplify otherwise complex issues. In distilling and resolving the genuine issues through special verdicts, an appellate court is often aided immeasurably in its review of the case. In short, special verdicts through the use of detailed interrogatories "make both a jury and a reviewing court so much the wiser and so much less confused." *Nowell v. Universal Elec. Co.,* 792 *F.*2d 1310, 1317 (5th Cir.), *cert. denied,* 479 *U.S.* 987, 107 *S.Ct.* 578, 93 *L.Ed.*2d 581 (1986) (citing *Ware v. Reed,* 709 *F.*2d 345, 355 (5th Cir.1983)).

New Jersey first adopted the use of the special verdict in 1948 when *Revised Rule* 3:49–1 was adopted. *N.J. Court Rules, R.* 4:50–1 (1953). That rule subsequently has been amended and is currently *Rule* 4:39–1, which provides, in pertinent part:

[t]he Court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact, in which case it may submit to the

jury either written questions which can be categorically or briefly answered.... *If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issues so omitted unless before the jury retires submission to the jury is demanded. The court may make a finding as to an issue omitted without such demand, or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.*

[Emphasis added.]

Because *Rule* 4:39–1 mirrors Federal Rule of Civil Procedure 49(a), the history and subsequent interpretation of Rule 49(a) is relevant to an understanding of our own rule. *See* New Jersey Supreme Court, *Tentative Draft, New Jersey Court Rules, Comment 1 on R. 3:49–1* at 193 (1947) (*Tentative Draft* ) (stating that New Jersey's special verdict rule "is Federal Civil Rule 49(a)").

Federal Rule 49(a) was adopted in 1938. Comment, *Special Verdicts: Rule 49 of the Federal Rules of Civil Procedure,* 74 *Yale L.J.* 483, 483 (1965) (*Special Verdicts* ). The rule represented the first time that federal district courts were explicitly authorized to order a jury to return a special verdict. *Ibid.* Rule 49(a) formally adopted a procedure that was already used in many state courts. In fact, by 1925, a majority of states had authorized the use of the special verdict as an alternative to the standard general verdict. *Id.* at 487; *see also Bree v. Jalbert,* 87 *N.J.Super.* 452, 462–66, 209 *A.*2d 836 (Law Div.1965) (reciting history of the use of special verdicts in New Jersey prior to the adoption of the special verdict rule in 1948), *aff'd,* 91 *N.J.Super.* 38, 219 *A.*2d 178 (App.Div.1966).

Although the special verdict had been widely used by 1925, it failed to flourish in large part because of the numerous pitfalls that its technical requirements presented to litigants. See *Special Verdicts, supra,* 74 *Yale L.J.* at 487. Those problems included the prospect that: (1) immaterial matters might be included; (2) *material matters might be omitted;* (3) conclusions of law instead of facts could be found; and (4) questions could be put to the jury in such form as to be uncertain, misleading or prejudicial. Edson R. Sunderland, *Verdicts, General and Special,* 29 *Yale L.J.* 253, 261 (1920). The pitfalls inherent in special verdicts resulted in errors that caused the party with the burden of proof either to

lose entirely, or to endure the penalty of a costly retrial. *Id.* at 263. As a result, the special verdict fell into disfavor.

The general verdict, because of its absence of particularized fact finding and lack of specificity determining essential but subsidiary issues, did not reveal underlying deliberative errors, and it therefore could be accepted as a just resolution of the controversy. The general verdict thus remained, for reasons of practicality and convenience, preferable to the risk-laden special verdict. As Sunderland stated in his oft-cited 1920 article:

> The real objection to the special verdict is that it is an honest portrayal of the truth.... [T]he great technical merit of the general verdict ... [is that it] covers up all the shortcomings which frail human nature is unable to eliminate from the trial of a case. In the abysmal abstraction of the general verdict concrete details are swallowed up, and the eye of the law, searching anxiously for the realization of logical perfection, is satisfied. In short, the general verdict is valued for what it does, not for what it is. It serves as the great procedural opiate, which draws the curtain upon human errors and soothes us with the assurance that we have attained the unattainable.
>
> *[Id.* at 262.]

Sunderland concluded that what was needed was "a method of using the *principle* of the special verdict under conditions which will make it a practical, workable tool for the ordinary lawyer in the ordinary case." *Id.* at 263.

Federal Rule 49(a) was designed to combat the formalisms and technicalities that made the common-law special verdict procedure hazardous to litigants. See *Special Verdicts, supra,* 74 *Yale L.J.* at 502. In fact, the main thrust of the rule was directed toward the elimination of the major hazard that had made the use of the special verdict problematic and impractical, namely, the requirement that the jury return a finding on every essential element of the cause of action. *Id.* at 502. Federal Rule 49(a) overcame that hazard through the use of the doctrine of waiver whereby the trial court could rectify omissions and complete the special-verdict process through necessary factfinding. *See ibid.;* Edward J. Devitt et al., *Federal Jury Practice and Instructions* § 6.02 (1992) ("The common law technical difficulties [of the special verdict]

were obviated by providing that there would be a waiver of jury trials on those issues not submitted to the jury.").

The opening sentence of Federal Rule 49(a) indicates that when a special verdict is used, the court should request the jury to return a finding on "each issue of fact." *Fed.R.Civ.P.* 49(a). However, the rule goes on to provide that the omission of a finding on "any issue of fact" is not necessarily fatal to a judgment entered on a special verdict. *Ibid.* Unless a party objects to the omission of an issue from the questions submitted, the parties waive their right to a jury trial on that issue. *Ibid.* If an issue is omitted without objection, the trial judge is authorized to make the necessary factual finding explicitly; and if the trial court fails to make such a finding, an appellate court is to assume that the required finding was made in accordance with the judgment rendered by the trial court. *Ibid.; see also* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2507 (2d ed.1995) (stating that federal rule "has the salutary purpose of giving the judge an opportunity to correct any inadvertent failure to submit [an] issue to the jury").

Federal courts have consistently enforced the waiver component of the special verdict rule. *See Bradway v. Gonzales,* 26 *F.*3d 313, 317 (2d Cir.1994) ("[F]ailure to challenge the omission of an issue from a Rule 49(a) verdict form before the jury retires to deliberate constitutes a waiver of the right to a trial by jury on that issue."); *Kavanaugh v. Greenlee Tool Co.,* 944 *F.*2d 7, 11 (1st Cir.1991) ("It is well settled that a litigant who accedes to the form of a special interrogatory will not be heard to complain after the fact. If a slip has been made, the parties detrimentally affected must act expeditiously to cure it, not lie in wait and ask for another trial when matters turn out not to their liking.") (quoting *Anderson v. Cryovac,* 862 *F.*2d 910, 918 (1st Cir.1988)); *Anderson, supra,* 862 *F.*2d at 918 ("The net result is that the rule invests the trial judge with extensive powers to resolve issues which should have been— but were not—covered by the interrogatories."); *J.C. Motor Lines, Inc. v. Trailways Bus Sys., Inc.,* 689 *F.*2d 599, 601–02 (5th

Cir.1982) (stating that courts long have extolled use of special interrogatories under Rule 49(a) and that omissions of issues of fact may be cured through use of waiver); *Hyde v. Land–Of–Sky Reg'l Council,* 572 *F.*2d 988, 991 (4th Cir.1978) (concluding that under Rule 49(a) defendant waived right to have jury decide issues of authority and ratification in contract action where parties failed to object to their omission); *Fredonia Broadcasting Corp. v. R.C.A. Corp.,* 481 *F.*2d 781, 796 (5th Cir.1973) (stating that if party fails to object to omission of question from special verdict form, it waives jury trial on that issue); *Brenham v. Southern Pacific Co.,* 328 *F.Supp.* 119, 123 (W.D.La.1971) (stating that where jury was not asked whether railroad's negligence was sufficient to constitute proximate cause of accident, district court would exercise authority under Rule 49(a) to make that federal determination) *aff'd,* 469 *F.*2d 1095 (5th Cir.1972), *cert. denied,* 409 *U.S.* 1061, 93 *S.Ct.* 560, 34 *L.Ed.*2d 513 (1972); *see also* John H. Brown, *Federal Special Verdicts: The Doubt Eliminator,* 44 *F.R.D.* 338, 349 (1967) ("The Rule itself ... takes care of one of the greatest drawbacks to a common law special verdict—the necessity that every element of recovery or defense had to be submitted or the verdict was incomplete and hence legally ineffectual."). *But see Kinnel v. Mid–Atlantic Mausoleums, Inc.,* 850 *F.*2d 958, 965–66 (3d Cir.1988) (*holding that where special verdict form in suit against mausoleum contractor and its president did not require jury to make findings concerning president's individual liability, trial court under Rule 49(a), although authorized to make subsidiary findings that would complete jury verdict, was not authorized to determine ultimate liability of president*).

## III

Before considering application of the special verdict waiver rule to the circumstances of this appeal, we first address the effect of the Comparative Negligence Act on the trial court's imposition of liability for the unallocated damages.

## A

■   The Act limited the authority of the Appellate Division to impose joint and several liability against both Jensen/Handex and Sacknowitz for the unallocated damages. *See* Senate Judiciary Committee, *supra*, at 1. Under the Act as amended, only a defendant found 60% or more responsible for the total damages is liable for the entire award. *N.J.S.A.* 2A:15–5.3a. As noted, the trial court had determined Jensen/Handex to be 100% responsible for the first impact and 60% responsible for the second impact. (In assigning 70% of the unallocated damages to Jensen/Handex and 30% to Sacknowitz, the trial court apparently made a rough determination that approximately 75% of those damages were attributable to the second impact and 25% to the first impact.) [2] Because the trial court's liability determination imposed on Jensen/Handex over 60% of the responsibility for plaintiff's total damages, the trial court was fully authorized to impose on Jensen/Handex joint and several liability for all of plaintiff's damages. However, the trial court's imposition of joint and several liability on defendant Sacknowitz for all plaintiff's damages, and the Appellate Division's imposition on Sacknowitz of joint and several liability for only the unallocated damages, cannot be reconciled with the Act.

The Appellate Division relied on *Hill v. Macomber, supra*, 103 *N.J.Super.* 127, 246 *A.*2d 731, in determining that all parties responsible for either the first or second impact would be jointly and severally liable for the unallocated damages. *Hill* was decided on facts similar to those in this case. In *Hill*, two cars collided, injuring both vehicles' occupants. *Id.* at 131–32, 246 *A.*2d 731. Shortly thereafter, another vehicle struck one of the disabled cars. *Id.* at 132, 246 *A.*2d 731. At trial, the occupants of the vehicles were unable to provide testimony allocating injuries as between

---

[2] We note that 100% of .25 × $450,000 plus 60% of .75 × $450,000 equals approximately $315,000, the 70% share of the $450,000 in unallocated damages imposed on Jensen/Handex.

the two impacts. *Id.* at 134, 246 *A.*2d 731. Medical testimony was similarly unhelpful. *Ibid.* The court, relying on the majority view at that time, held that where there are collisions in rapid succession and no proofs permitting allocation of damages among the tortfeasors, both tortfeasors are to be held jointly and severally liable. *Id.* at 136–37, 246 *A.*2d 731. Because *Hill* was decided before the advent of the Act and the Legislature's subsequent modification of joint and several liability, the Appellate Division incorrectly relied on *Hill* as a precedent authorizing the imposition of joint and several liability for the unallocated damages. Although the Act does not specifically address the jury's responsibility in cases involving injuries sustained in successive accidents, we infer that the legislative objective would be achieved by requiring juries to apportion damages between the successive accidents and to apportion fault among the parties responsible for each accident.

Although unnecessary to our disposition, we add the following observations. In our view, the Act contemplates an allocation of damages caused by successive accidents in order to effectuate the allocation of liability among the responsible defendants. At the conclusion of a trial where allocation of damages among multiple tortfeasors is an issue, the trial court is to determine, as a matter of law, whether the jury is capable of apportioning damages. *Cf. Brown, supra,* 674 *A.*2d at 1137 (holding that court is to determine as matter of law whether defendants are joint tortfeasors). The absence of conclusive evidence concerning allocation of damages will not preclude apportionment by the jury, but will necessarily result in a less precise allocation than that afforded by a clearer record. *See, e.g., Jenkins, supra,* 67 *N.J.L.* at 334, 51 *A.* 704; *Loui, supra,* 438 *P.*2d at 396–97; Prosser, *supra,* at 439. If the court establishes as a matter of law that a jury would be incapable of apportioning damages, the court is to apportion damages equally among the various causative events. *Cf. Loui, supra,* 438 *P.*2d at 397 (instructing that juries should apportion fault equally among various accidents if unable to make rough apportionment); *Bendar, supra,* 247 *N.J.Super.* at

234, 588 *A.2d* 1264 (suggesting like result if jury is unable to apportion fault among tortfeasors). If the court concludes that the jury would be capable of apportioning damages, the jury should be instructed to do so.

## B

When this Court first proposed the adoption of a special verdict rule, we recognized that the rule would eliminate the perils inherent in the common-law practice:

> The procedure [regarding special verdicts at common law] is so technical that a person having the burden of proof can hardly risk a special verdict for fear that it will be [inartfully] drawn and may inadvertently omit some fact or set it up in an improper manner so that the special verdict will not support a judgment in his favor. *The new rule provides a very effective and simple remedy... [as it] takes all the technical risks out of the special verdict.*
>
> [*Tentative Draft, supra,* at 193 (emphasis added) (quoting Edson R. Sunderland, *The New Federal Rules,* 14 *W. Va. L.Q.* 5, 28 (1938)).]

In *Nylander, supra,* 41 *N.J.* at 240, 196 *A.2d* 1, we explained that the purpose of our special verdict rule was to make possible "the ascertainment and isolation of any error, consequent frequent avoidance of full-blown appeals and full-scale retrials, and the more exact administration of justice." *See* Pressler, *Current N.J. Court Rules,* comment on *R.* 4:39–1 (1997).

Although there is a dearth of reported opinions concerning our special verdict rule, two Appellate Division cases make clear that parties waive their right to a jury trial concerning issues not raised by special verdict interrogatories unless they object to such omissions prior to submission to the jury. In *Stella v. Dean Witter Reynolds, Inc.,* 241 *N.J.Super.* 55, 574 *A.2d* 468 (App.Div.), *certif. denied,* 122 *N.J.* 418, 585 *A.2d* 412 (1990), an investor brought suit against a stockbroker, a brokerage house and two banks. The jury verdict awarded the investor $166,000 in punitive damages against one of the banks, but no compensatory damages. *Id.* at 69, 574 *A.2d* 468. In order to collect punitive damages in the absence of an award of compensatory damages, the Appellate Division determined that the investor must first demonstrate that he suffered "some harm" as a result of the bank's conduct. *Id.* at

70, 574 A.2d 468. At trial, however, the jury had made no sustainable finding in respect of that issue—the jury simply had never been asked whether or not the investor had suffered any harm as a result of the bank's practices. *Ibid.* The Appellate Division determined that the special verdict rule, *Rule* 4:39–1, provides a remedy to correct the omission without a new trial on the issue of whether the investor had suffered harm:

> By virtue of *R.* 4:39–1, "If ... the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issues so omitted unless before the jury retires he demands its submission to the jury." In the present case ... there was no such demand.
>
> [*Id.* at 72, 574 A.2d 468 (quoting *R.* 4:39–1).]

In the absence of a demand by either party, both parties waived their right to a jury trial on the issue of harm, and the Appellate Division, therefore, remanded the case to the trial court for a finding on that issue. *Ibid.*

Similarly, in *Duall Building Restoration, Inc. v. 1143 East Jersey Avenue Associates,* 279 *N.J.Super.* 346, 652 A.2d 1225 (1995), the jury returned a special verdict by answering questions on material issues of disputed fact. 1143 East Jersey, the building owner that claimed damages when a waterproofing paint peeled from the sides of its building, pleaded breach of implied warranty, but no party requested the court to submit questions to the jury about whether there had been a breach, pursuant to *N.J.S.A.* 12A:2–315, of the implied warranty of fitness for a particular purpose or alerted the court to the fact that language of one interrogatory failed to track any implied warranty provision of the Uniform Commercial Code. *Id.* at 360, 652 A.2d 1225. Noting that no party objected to the relevant interrogatory or to the trial court's instruction about its meaning, the Appellate Division concluded that the jury understood that it was to determine whether the paint contractor relied on the paint manufacturer's assurance that the paint used was suitable for the building in question. Consequently, the Appellate Division held that if the "court's jury charge or interrogatories 'omit[ted] any issue of fact raised by the pleadings or by the evidence, [the court is] deemed to have made a

finding in accord with the judgment on the special verdict.' " *Ibid.* (quoting *Rule* 4:39–1).

█ Although in this case the Appellate Division observed that application of the waiver rule would be inappropriate because of counsel's lack of opportunity to object to the special verdict form, we disagree with that conclusion. The record reveals that a draft special verdict form prepared by the trial court was discussed with counsel at the charge conference two days before the trial ended. Although the final version of the special verdict form was not distributed to counsel until the trial court substantially had completed its jury charge, the court afforded counsel an opportunity to examine the form and raise questions and objections. Based on counsel's comments, the trial court issued clarifying instructions concerning several interrogatories. Despite the obvious significance of a jury determination concerning whether and the extent to which the initial impact constituted a proximate cause of the second impact, neither counsel nor the court noticed the omission of such an interrogatory from the verdict form. Nor was any objection to the form asserted during the approximately five hour period during which the jury deliberated before returning its verdict.

We are mindful that failure to enforce the waiver provision of *Rule* 4:39–1 would require a substantial re-run of the eleven-day trial in order for a new jury adequately to hear and determine the liability issues left unresolved by the Appellate Division's disposition. We also note that the litigation concerns an accident that occurred in June 1989, over eight years ago.

█ Moreover, the findings of fact made by the trial court pursuant to our special verdict rule to rectify omitted questions were wholly supportable on the record. As noted, *supra*, at 183, 695 *A.2d* at 1374, the trial court's apportionment of 70% of the unallocated damages to Jensen/Handex and 30% to Sacknowitz appears to reflect its determination that approximately 75% of those damages were attributable to the second impact and 25% to the first impact. That conclusion finds ample support in the

record.  The trial court also expressed its view that, were it not for the first accident, the second impact would not have occurred, and that therefore the first impact was the primary cause of the second collision.  Consistent with that view, which is also amply supported by the record, and with its holding that Jensen/Handex was one hundred percent responsible for the first impact, the trial court found Jensen/Handex 60%, Sacknowitz 35%, and Campione 5% responsible for the second collision.

The factual findings rendered by the trial court pursuant to the special verdict rule were reasonable in light of the evidence presented during trial.  Furthermore, none of the trial court's findings contradicted the incomplete jury determinations.  Such findings of fact should therefore not be disturbed unless "they are so wholly insupportable as to result in a denial of justice." *Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.*, 65 *N.J.* 474, 483–84, 323 *A.*2d 495 (1974); *see also In re Return of Weapons to J.W.D.*, 149 *N.J.* 108, 117, 693 *A.*2d 92, 96 (1997) ("'[A]n appellate court should not disturb a trial court's fact-findings unless those findings would work an injustice.").

The foregoing considerations, combined with the important policy considerations that led to the inclusion of the waiver provision in *Rule* 4:39–1, persuade us that the trial court's supplemental factfinding should not be disturbed and that the waiver provision of *Rule* 4:39–1 should be enforced in view of the parties' failure to object to the omission of issues from the special verdict form.

### C

The Appellate Division also reversed the trial court's summary determination that defendant Soden bore no responsibility for the first rear-end collision.  Defendant Soden's vehicle was hit from behind after she had stopped at a red light while traveling south on Route 9. Defendant Jansen/Hendex's vehicle, a light-duty pickup truck, rear-ended Soden's car immediately after the light had turned green.  It was raining at the time of the accident and evidence was presented that the roads were slick.

Although testimony was adduced that suggested that Soden stopped short because the vehicle in front of her stopped suddenly, which Soden disputed, the trial court concluded that the undisputed evidence demonstrated that if indeed Soden stopped short she did so for good reason and without colliding with the vehicle in front of her. Consistent with the principles articulated in *Dolson v. Anastasia,* 55 *N.J.* 2, 258 *A.*2d 706 (1969), the trial court directed a verdict in favor of Soden. In *Dolson,* we observed:

> It is elementary that a following car in the same lane of traffic is obligated to maintain a reasonably safe distance behind the car ahead, having due regard to the speed of the preceding vehicle and the traffic upon and condition of the highway. Failure to do so resulting in a collision, *is* negligence and a jury should be so instructed.
>
> [*Id.* at 10, 258 *A.*2d 706 (citation omitted).]

In *Brill v. Guardian Life Insurance Co. of America,* we recently observed that "a determination whether there exists a 'genuine issue' of material fact that precludes summary judgment requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." 142 *N.J.* 520, 666 *A.*2d 146 (1995). "If there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact...." *Ibid.*

In view of the evidence presented at trial that the roads were wet, that Soden's vehicle was already stopped for a red light, that there were no obstructions or distractions, and that Soden's vehicle was hit from behind, the trial court's entry of judgment in favor of Soden should not have been disturbed.

### D

Concerning the admissibility of tax returns, in *Ullmann v. Hartford Fire Insurance Co.,* 87 *N.J.Super.* 409, 415, 209 *A.*2d 651 (App.Div.1965), the Appellate Division observed that "New Jersey,

in common with most jurisdictions in which the question has arisen, has permitted discovery and inspection of income tax returns for good cause." Disclosure of a litigant's tax return is, however, a highly sensitive endeavor. *See, e.g., Herman v. Sunshine Chem. Specialties, Inc.,* 133 *N.J.* 329, 343, 627 *A.*2d 1081 (1993) (recognizing that normal rule favoring extensive discovery is tempered by litigants' interest in maintaining confidentiality of financial status). A taxpayer is entitled to nondisclosure of his or her return absent a "strong need" for information contained in the return. *Ullmann, supra,* 87 *N.J.Super.* at 415, 209 *A.*2d 651. "If disclosure will not serve a substantial purpose it should not be ordered at all." *Id.* at 415–16, 209 *A.*2d 651; *see also* Pressler, *Current N.J. Court Rules,* comment 2 on *R.* 4:18–1 (1996) (noting that discovery of income tax returns continues to be governed by *Ullmann* ).

▮ We are unpersuaded by Jensen/Handex's argument that the trial court erred by excluding admission of Campione's tax returns. Both Campione and his psychiatrist intimated that Campione's inability to participate in the business of Campione Associates contributed to his post-accident psychiatric problems. Campione, however, never attempted to value the business nor did he seek to assert a claim for the business's lost earnings or for his own lost wages. Furthermore, the trial court explicitly charged the jury that the plaintiff's claims did not include loss of income or business profits:

> Now, the plaintiff's claim[s] against the defendants in this case are limited to pain, suffering, disability and the loss of enjoyment of life and don't include any claim for medical expenses, nor does the plaintiff seek any claim or damages for loss of wages or earnings, nor as to any loss of profits or business from Campione Associates. Therefore, in terms of calculating the damages that you feel that plaintiff is entitled to, you shall not consider what medical expenses he may have had or any loss of wages or profits and so forth.

Absent such claims, no "strong need" or "substantial purpose" for disclosure of the returns existed. *Ullmann, supra,* 87 *N.J.Super.* at 415–16, 209 *A.*2d 651. The trial court's exclusion of the returns was proper.

## IV

We reverse the judgment of the Appellate Division and reinstate the judgment of the Law Division except to the extent that it imposed joint and several liability on defendant Marcia Sacknowitz. The matter is remanded to the Law Division for entry of a judgment in conformity with this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.