■ FOUR ACES JEWELRY CORP., Respondent, v JEFFREY D. SMITH et al., Appellants. (And a Third-Party Action.) [680 NYS2d 539] —Order, Supreme Court, New York County (Lorraine Miller, J.), entered January 8, 1998, which, insofar as appealed from, denied defendants' motion to renew their prior motion to compel production of plaintiff's 1993 and 1994 corporate income tax returns, reversed, on the law, without costs, the motion granted and plaintiffs directed to produce their 1993 and 1994 corporate income tax returns.

While tax returns are not discoverable absent a showing of overriding necessity (Matthews Indus. Piping Co. v Mobil Oil Corp., 114 AD2d 772), here, defendants have made the requisite showing. That there was a substantial variance be-

tween plaintiff's valuations of its inventory as of December 31, 1992, in a report to its insurer's accountant, and as of March 31, 1993, in its application for insurance, creates a proper basis for compelling production of plaintiff's 1993 and 1994 tax returns. This variance between the two valuations raises at least an inference of possible fraud, overcoming our normal reluctance to order production of tax returns (*see, e.g., David Leinoff, Inc. v 208 W. 29th St. Assocs.*, 243 AD2d 418, 419-420; *Leon Sylvester, Inc. v Aetna Cas. & Sur. Co.*, 189 AD2d 730). Moreover, the denials by plaintiff's principal and manager of any personal knowledge of the pre-incident inventory value, or personal involvement in either of the two valuations, leave a void as to the underlying financial position of the corporation for the periods in question. Concur—Sullivan, J. P., Mazzarelli and Saxe, JJ.

Rubin and Tom, JJ., dissent in a memorandum by Tom, J., as follows: The issue before us is whether there exists an overriding necessity, the standard we have consistently articulated, justifying the disclosure of the plaintiff's corporate tax returns. Respectfully, I conclude that there is not.

Plaintiff owns and operates a jewelry store located in defendant's building. The store was burglarized in June 1994, during which jewelry was stolen from a storage vault. Plaintiff's insurance policy limit was $150,000, which it has been paid, minus the deductible. In 1996, plaintiff commenced this action, sounding in negligence, breach of contract and fraud, against the building owner to recover the value of jewelry that was unreimbursed by insurance proceeds, on the theory that defendant breached its lease by failing to provide for a secure vault and was lax in providing security. The ad damnum clause in the complaint alleges that plaintiff believed the theft to have exceeded $1 million. Appraisers, hired by plaintiff's insurer, valued the inventory on December 31, 1992 at $2,794,875, and plaintiff submitted a valuation of $450,000 on March 31, 1993 in connection with the insurance application, upon which value defendant presently seizes. Presumably to challenge the damages claimed in the complaint, defendant now seeks disclosure of plaintiff's corporate tax returns for 1993 and 1994 to establish the inventory for those years. However, other discovery materials establishing valuation of the inventory at the time of the theft, such as detailed inventory sheets, monthly purchase and sales invoices for 1993-1994, and additional materials, apparently were provided by the date of the order under review.

In view of the confidential nature of tax returns, "a party seeking to compel their production must make a strong show-

ing of overriding necessity * * * demonstrat[ing] that the information contained in plaintiff's tax returns is indispensable to the instant litigation and unavailable from other sources" (*Matthews Indus. Piping Co. v Mobil Oil Corp.*, 114 AD2d 772; *accord, Gordon v Grossman*, 183 AD2d 669). Absent a demonstration of overriding necessity and indispensability, a court requiring disclosure improvidently exercises its discretion (*Gordon v Grossman, supra*). Under limited circumstances, typically cases involving insurance fraud, we have abrogated the rule of non-disclosure. We found an adequate showing where the principal of one closely held corporation, a furrier, filed an insurance claim for damages to inventory caused by leakage. The insurer's adjuster concluded that the stock was too badly damaged to have significant salvage value, and the salvage company sold the stock for a modest sum, with the insurer compensating the insured, which subsequently went out of business, for the value of the lost stock. However, the insured's principal was then hired by another furrier, formed around the time of the salvage sale, in which his wife was the principal; the second company purchased some of the salvaged goods attested by the adjuster to have been damaged. The adjuster and a principal of the salvage company subsequently were convicted of rigging insurance scams in unrelated cases. We found sufficient indicia of fraud there to justify disclosure of plaintiff's personal, and his wife's corporate, tax returns, though limited to relevant time periods. Similarly, when a defendant insurer asserted an arson defense against the insured closely-held corporate plaintiff, and the personal finances of the plaintiff's two principals were relevant to the issue of arson, we found limited disclosure of their personal tax returns to be warranted (*Leon Sylvester, Inc. v Aetna Cas. & Sur. Co.*, 189 AD2d 730). Manifestly, these circumstances do not exist here where, despite claims of "variances" and "disparities" in inventory during time periods preceding the insurable incident, there is no showing, nor even an affirmative allegation, of fraud.

The majority finds salience in the disparity between the December 31, 1992 and March 31, 1993 inventory valuations. These were points in time approximately a year and a half before the June 1994 theft, during which period inventory presumably fluctuated depending on the market or plaintiff's business sales, so that I fail to see the reliability of these early valuations as evidence of the actual inventory on the date of the theft. Moreover, even the relation of the December 1992 valuation to the March 1993 valuation is inconclusive—inventory could well have moved during that three month period due to business transactions, especially since it is not unknown

in the jewelry business for items to be delivered to prospective buyers on consignment. Hence, I do not see a logical basis upon which I can agree with the majority's main point that the variance between the December 1992 and March 1993 valuations raises an inference of fraud. Since other documents tracking the movement of inventory during the relevant time periods are available to defendant, defendant has not yet made a showing of the requisite overriding necessity and indispensability for disclosure of tax returns.

In the July 21, 1997 order underlying the present order under review denying renewal, the motion court, while finding the tax returns to be presently neither relevant nor necessary, indicated that defendant was free to renew the request upon an adequate showing of need. Although upon renewal the court adhered to its original conclusion, it nevertheless showed that it would be flexible were an adequate showing to be made. Hence, there is no indication that the court failed to exercise its discretion, the applicable standard when reviewing discovery rulings.

Nor do the denials by plaintiff's principal and manager of their personal knowledge of the pre-incident inventory value, or their personal involvement in either of the two valuations, suggest anything amiss. Plaintiff's employees were available for further discovery and the firm that conducted the appraisal was available for a deposition.

Accordingly, I would affirm the order on appeal.