ATLANTIC COUNTY COURT OF OYER AND TERMINER.

IN THE MATTER OF THE APPLICATION OF GEORGE FREY, HARRY SAUNDERS, WILLIAM BAYNARD AND WILBURTH SPRIGGS TO QUASH SUBPŒNAS DUCES TECUM.

For the petitioners, *Harry Miller.*

For the State of New Jersey, *Warren Dixon, Jr.,* Deputy Attorney-General.

The opinion of the court was delivered by

EASTWOOD, J. Petitioners are officially connected with the police department of the City of Atlantic City and make application before me, as Supreme Court Justice presiding over the Court of Oyer and Terminer in and for the County of

Atlantic, to quash *subpœnas duces tecum* heretofore issued out of the said Atlantic County Court of Oyer and Terminer, and directing them to appear before the grand jury in the aforesaid County of Atlantic, and produce copies of their "1946 and 1947 income tax returns, together with all supporting data and memoranda in connection therewith."

Petitioners, in their application, recite that Warren Dixon, Jr., in May, 1947, pursuant to my request, was designated by Walter D. Van Riper, Attorney-General of the State of New Jersey, as a Deputy Attorney-General for the purpose of aiding in the prosecution of the criminal business of Atlantic County, and pursuant thereto Mr. Dixon undertook and is still engaged in an investigation of alleged violations of the gambling laws of the State of New Jersey; that the May term, 1947, grand jury has, pursuant to orders made by me, continued to and still does function as the grand jury charged with the specific duty of making inquiry into alleged violations of said gambling laws; that the *subpœnas duces tecum* in question were issued and served upon the petitioners, directing them to appear before said May term, 1947, grand jury.

Petitioners, in support of their application to quash said subpœnas, argue that (1) the compulsory production of said records "constitutes an unreasonable search and seizure and is in violation of article I, paragraph I, article I, paragraph 7, of the New Jersey Constitution, *N. J. S. A.*, and in violation of the Fifth Amendment of the United States Constitution;" and (2) "The mere fact that the papers are sought by the *subpœna duces tecum* at the instance of the Deputy Attorney-General conducting a grand jury investigation will not warrant their production in violation of the fundamental rights of the petitioners."

Under point I, petitioners argue that, while they do not presently seek the protection of the Fifth Amendment to the United States Constitution against self-incrimination, the constitutional amendment in question "has some overall bearing on the question involved here in so far as the same relates to the production of private records in violation of the right of privacy." As I view it, the question of self-incrimination

cannot be raised by the petitioners at this time. The state concedes that "if the right against self-incrimination is relied on by any witness under subpœna as a reason for the non-production of records or the refusal to answer questions, the production of which or the answering of which would actually incriminate, that there can be a proper refusal predicated on the right against self-incrimination." Such a right must be exercised by the witness when he is called upon to produce the records in question or to testify regarding same. This principle of law is so firmly established by our judicial decisions, it requires no citations to support it.

As to petitioners' argument that the production of said income tax returns and supporting data invades their right of privacy, that they are privileged documents and, therefore, the state is not entitled to their production before the grand jury, is not supported by the weight of judicial authority. *In re City of Newark,* 118 *N. J. L.* 533; 190 *Atl. Rep.* 306, a lawyer named Irving Mandelbaum was subpœnaed as a witness to appear before Supreme Court Commissioner Warren Dixon, Jr., to respond to interrogation regarding "some of his personal papers, including bank statements and canceled checks, which he had been directed by the subpœna to produce." Mandelbaum refused to testify regarding these matters on the ground that it was an intrusion into his personal affairs and that he had a constitutional right to refuse. Mandelbaum was adjudged in contempt because of his refusal to testify regarding said personal papers, in that he made no claim of self-incrimination. Mr. Justice Parker in his opinion, adjudging Mandelbaum in contempt, *inter alia,* stated:

"Reverting to the particular questions before me, I consider that Mr. Mandelbaum was not justified in refusing to obey the *subpœna duces tecum, In re Lefferts,* 67 *N. J. L.* 172; 50 *Atl. Rep.* 342, nor was he justified in refusing to testify on the ground of irrelevancy or immateriality, and no claim of incrimination is made. As to the Union Bank, I do not understand that it objected to producing the Mandelbaum account, except that it wished his consent. If these witnesses were before a Vice-Chancellor, or in a law court,

and proper objections were made by a party, apart from privilege, the judge would examine the documents and admit or exclude them according as he found them competent or otherwise."

It is my view that the City of Newark case, *supra,* is dispositive of the issue here.

Petitioners argue, also, that from the record before the court it cannot be determined whether the compulsory production of the documents mentioned in the *subpœnas duces tecum* is reasonable in the absence of any evidence or facts before it to enable it to pass upon that issue. Petitioners admit knowledge of the investigation which has been conducted by Mr. Dixon for many months and that the May term, 1947, grand jury is still functioning for the consideration of alleged violations of the gambling laws of this state. It seems to me that it is a justifiable implication that the testimony sought from the petitioners, particularly with regard to the documents in question, is in connection with the investigation of said alleged gambling activities in Atlantic County. Such an inquiry is properly within the broad inquisitorial powers of the grand jury.

The parties hereto have stipulated that new *subpœnas duces tecum* issued and served upon the petitioners since the presentation of the petition filed herein, may be considered by me in disposing of this issue, as fully as though they had been issued and served at the time of the presentation of this application.

I have considered the other grounds advanced by petitioners and do not find that any of their constitutional rights are violated.

The application to quash said *subpœnas duces tecum* is denied. The petitioners are directed to appear before said grand jury, together with the documents called for in said subpœnas, when notified to do so.