87 N.J. Super. 409 (1965)
209 A.2d 651
WILLIAM L. ULLMANN, N. GREGORY SILVERMASTER AND HELEN P. SILVERMASTER, PLAINTIFFS-APPELLANTS,
v.
HARTFORD FIRE INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 15, 1965.
Decided May 3, 1965.
*412 Before Judges GAULKIN, FOLEY and COLLESTER.
Mr. Cyrus J. Bloom argued the cause for appellants.
Mr. William B. McGuire argued the cause for respondent (Messrs. Lum, Biunno & Tompkins, attorneys).
The opinion of the court was delivered by GAULKIN, S.J.A.D.
On January 15, 1965 the trial judge ordered that by 2 P.M. of that day plaintiffs "appear in Newark * * * and provide defendant with whatever forms are necessary to enable said defendant to obtain from the Internal Revenue Service any information as to whether the said plaintiffs have filed income tax returns for the years 1962 and 1963 and whether any extensions for the filing of said returns have been granted; * * * [and] with certified copies of the Surrogate's Certificate showing the appointment of Helen (Mrs. N. Gregory) Silvermaster as Executrix of the estate of N. Gregory Silvermaster, deceased, so that defendant can obtain from the Internal Revenue Service information as to whether N. Gregory Silvermaster filed income tax returns for the *413 years 1962 and 1963 or whether any extensions for the filing of said returns have been granted; * * * [and] That the accountant for the plaintiffs be produced in Newark * * * in the event that the Internal Revenue Service requires any counter-signature from the said accountant for any of the foregoing; and That upon default of plaintiffs performing all of the foregoing by two o'clock in the afternoon of January 15, 1965 the Court will enter an Order dismissing the plaintiffs' Complaint herein; * * *."
We granted plaintiffs leave to appeal.
The complaint, filed June 19, 1962, alleged a claim upon a windstorm policy for damage which occurred on March 6, 1962. Defendant's answer denied that the damage was due to an insured risk. The pretrial order stated defendant's contention to be that the damage was done by "wave wash or other water damage, such as surface water, waves, overflow of bodies of water or some similar occurrence."
On April 4, 1963, on defendant's motion and over plaintiffs' opposition, the court ordered plaintiffs to produce for inspection and copying plaintiffs' 1961 and 1962 federal income tax returns. We have examined the moving papers upon which this order was entered and find therein no justification for the order.
It appears that plaintiffs had filed no return for 1962 and that they objected to disclosing those portions of the 1961 returns which had no relation to their claim. Nevertheless, on July 24, 1963 the court ordered their production "in their entirety." Plaintiffs then produced their 1961 returns for inspection, and on January 13, 1964 an order was entered "that plaintiffs furnish the defendant with full and complete copies of their 1962 Federal Income Tax Returns, by requesting copies thereof from the Internal Revenue Service, when same have been filed * * *."
On November 19, 1964 defendant moved for an order to compel plaintiffs to produce proof that they had not filed income tax returns not only for 1962 but for 1963 as well. When plaintiffs insisted that none had been filed, the court *414 entered an order which provided "that the plaintiffs submit to the defendant a certified copy, or copies of any extensions of time granted to them or any of them by the Director of Internal Revenue for the filing of their 1962 and 1963 Federal Income Tax Returns within 14 days of this date." Plaintiffs having failed to comply with the order of November 19, defendant obtained the order now appealed from.
Discovery is intended to expedite a fair trial. It is not to be used to delay one, or to harass the adversary. Unless there is substantial reason to disbelieve a party, his statement under oath that he has filed no return should suffice, and he should not be ordered to prove it as was done here. DiBiasso v. Gonsenhauser, 36 Misc.2d 799, 232 N.Y.S.2d 888, 889 (Sup. Ct. 1962); cf. Blanchet v. Colonial Trust Company, 23 F.R.D. 118, 120 (D.C. Del. 1958); Louisville & Nashville R.R. Co. v. Blevins, 293 S.W.2d 246, 250 (Ky. Ct. App. 1956).
In order to pass upon the propriety of the order appealed from, it was necessary for us to examine the propriety of the orders of January 13 and November 19, 1964. We hold that these orders should not have been entered. Consequently, the order now appealed from, which was intended to compel immediate compliance with those orders, is reversed without regard to its own objectionable features.
Defendant's motions were predicated upon R.R. 4:24-1, which requires an applicant to show "good cause" for the inspection he seeks. "Unlike other modes of discovery, not similarly qualified, which cast the burden of resisting relief upon the respondent, the applicant must establish affirmatively the propriety of an inspection." 2 Schnitzer and Wildstein, N.J. Rules Service, A IV-697.
It is impossible to lay down a universal definition of good cause for disclosure and inspection, or an all-inclusive and definitive catalogue of all of the circumstances to be considered by a court in determining whether there is good cause. Each case must be decided upon its own facts. However, as is said in 4 Moore's Federal Practice (2d ed), ¶ 34.08: *415 "Considerations of practical convenience should play the leading role in determining what constitutes good cause * * *."
Good cause for the production of income tax returns is not shown when the movant has the information sought or can obtain it with little difficulty through other methods. Cooper v. Hallgarten & Co., 34 F.R.D. 482 (D.C.S.D.N.Y. 1964); Wilkerson v. Newark Diner, Inc., 3 Storey 578, 173 A.2d 883 (Del. Super. Ct. Del. 1961); Blanchet v. Colonial Trust Company, supra; Jacobs v. Kennedy Van Saun Mfg. & Eng. Corp., 12 F.R.D. 523 (D.C. Pa. 1952); Garrett v. Faust, 8 F.R.D. 556 (D.C.E.D. Pa. 1949).
New Jersey, in common with most jurisdictions in which the question has arisen, has permitted discovery and inspection of income tax returns for good cause. Finnegan v. Coll, 59 N.J. Super. 353, 356 (Law Div. 1960); cf. Application of Frey, 26 N.J. Misc. 193 (O. & T. 1948); Annotation, 70 A.L.R.2d 240-265 (1960). However, the discovery and inspection of income tax returns presents special problems. As Judge Weinfeld said in Cooper v. Hallgarten & Co., supra:
"* * * Public policy favors the nondisclosure of income tax returns. Criminal sanctions for unauthorized disclosure underscore this policy. The courts are not altogether in accord as to whether or not this public policy has cloaked the returns with a privilege in favor of taxpayers who are litigants in private suits. But assuming that a litigant's tax returns are not privileged and are subject to pretrial procedure, the public policy against disclosure cannot be ignored; it must be taken into account together with the policy which favors liberal pretrial discovery. Giving appropriate weight to each, the production of tax returns should not be ordered unless it clearly appears they are relevant to the subject matter of the action or to the issues raised thereunder, and further, that there is a compelling need therefor because the information contained therein is not otherwise readily obtainable. * * *." (34 F.R.D., at pp. 483-484)
The average taxpayer is sensitive about his return and wishes to keep it from publication. He is entitled to that privacy unless there is strong need to invade it. If disclosure will not serve a substantial purpose it should not be ordered *416 at all. If ordered, disclosure should be no greater than justice requires. The disclosure of entire returns should never be ordered if partial disclosure will suffice, and in all but the clearest cases the return should be examined by the judge before any disclosure is ordered. Even then the judge should impose such restrictions and limitations as may be necessary for the protection of the taxpayer. Cf. 2 Schnitzer and Wildstein, N.J. Rules Service, supra, A IV-699; Annotation, 70 A.L.R.2d, supra, at p. 254.
The foregoing rules govern the disclosure of existing income tax returns. A fortiori, if disclosure of returns to be filed may be compelled (upon which we express no opinion except to say it should not have been ordered here), the court must be even more circumspect.
Defendant argues that it is entitled to such future disclosure because the returns to be filed may reveal "information dealing with either the cause of the loss or the extent of the loss * * *." As to the cause of the loss defendant says:
"Section 165 of the Internal Revenue Code, Title 26 U.S.C. § 165, permits a deduction from gross income on the income tax return of an individual for any loss not compensated for by insurance. One such type of loss contemplated by this section of the Internal Revenue Code is a casualty loss, such as damage to any building or residence or property of a taxpayer. Any information appearing on either the income tax return for the year in question or a subsequent year, or the reasons given by the taxpayer for securing an extension of time to file the return may be highly relevant to the issues involved in this case in the light of this section."
It seems to us that defendant's argument sums up to this: plaintiffs must file income tax returns every year; when they file their returns for 1962 or 1963 they will have to make a choice whether (1) to treat the loss as a windstorm loss and claim no credit against their taxes, or (2) to claim the loss was not by windstorm, or (3) if such filing is possible, to file a return claiming not to know whether or not the loss was by windstorm. Defendant argues that if the return to be filed should contain either (2) or (3), it could be used against plaintiffs as an admission that the loss was not by windstorm.
*417 The burden of proving a windstorm is upon plaintiffs, and it will not be proved by their mere say-so. Newman v. Great American Insurance Company, 86 N.J. Super. 391 (App. Div. 1965). On the other hand, if plaintiffs do prove a prima facie case of windstorm, such admissions as defendant hopes to find in plaintiffs' future income tax returns will be of little or no value in disproving it, too trifling to justify the orders that were here entered.
As to defendant's argument that the return may show something as to the extent of the loss, it seems to us hardly likely that plaintiffs will claim less of a loss in their tax return, if there they claim any, than they claim from defendant. Furthermore, the action is for damage to tangible property. Doubtless defendant has had inspections and appraisals. It has had discovery by way of interrogatories and depositions as to the details of the damages. It has examined plaintiffs' 1961 returns and many other of plaintiffs' books, records and writings. The chance that the 1962 and 1963 returns will reveal something that defendant does not already know, or an admission or inconsistency that might be useful at the trial, is so remote and inconsequential as not to warrant the orders that were entered and the delay that they entailed.
The loss happened on March 7, 1962. The action was instituted on June 20, 1962. We see no reason to delay the trial any longer. The order appealed from is reversed with directions that the case be tried as soon as possible. Costs to plaintiffs.