642 A.2d 1042

JOHN W. HARMON, RONALD M. GARGANO, AND MICHAEL FILLER, JR., PLAINTIFFS–APPELLANTS, v. GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 18, 1994—Decided June 3, 1994.

Before Judges SHEBELL, LONG and LANDAU.

*Neil Mullin* argued the cause for appellant (*Smith, Mullin, P.C.; Nancy Erika Smith*, of counsel; *Walter Lucas*, on the brief).

*Margaret M. Madden* argued the cause for respondent (*Grotta, Glassman & Hoffman, P.A.; Ms. Madden* and *Mark J. Potel* on the brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

This appeal involves a discovery issue which arises out of an age discrimination suit brought by plaintiffs, John Harmon, Ronald Gargano, and Michael Filler against defendant, The Great Atlantic & Pacific Tea Company (A & P). The complaint alleges that plaintiffs' employment with defendant was terminated in violation of the New Jersey Law Against Discrimination (LAD), *N.J.S.A.* 10:5–1 to –42. Plaintiffs' complaint further alleges that they suffered and continue to suffer "severe mental anguish, stress,

humiliation and pain" as a result of the "wrongful acts" of defendant. Plaintiffs seek, among other relief, "[c]ompensatory damages, including damages for pain and suffering ... [and] [p]unitive damages."

As part of discovery, identical document requests were served on all plaintiffs. Plaintiffs objected to those portions of defendant's requests which sought plaintiffs' checkbook registers, bank statements and credit card bills, receipts and statements for the period "from January 1, 1990, to the present." Following unsuccessful attempts to resolve the issue, defendant filed a motion to compel plaintiffs' compliance. Without oral argument, the Law Division judge ordered plaintiffs to produce the documents. We granted plaintiffs' motion for leave to appeal, and now reverse.

Plaintiffs were employees of A & P. On or about April 17, 1991, plaintiffs were terminated in a company-wide layoff involving approximately 100 employees, as part of A & P's "1991 capital plan." Plaintiff Harmon, fifty-four years old at the time of the layoff, was National Director of Construction and had been an employee of A & P for thirty-eight years. Five employees of defendant had the same title and job duties of plaintiff Harmon. Two of these five were also laid off at the same time as plaintiff and a total of approximately twenty-one people were laid off in his department. Plaintiff Gargano, fifty-seven years old at the time of the layoff, was Director of Architecture. He had been employed by A & P for seven and one-half years. Plaintiff Filler, age sixty-four at the time of the layoff, was Director of Special Projects. He had been employed by defendant for seven years.

Defendant's motion to compel the turnover of documents related specifically to the following two paragraphs contained in its request for production of documents that was served upon all three plaintiffs:

13. Plaintiff's checkbook registers and bank statements for the period January 1, 1990 to the present;

*    *    *    *    *    *    *    *

17. All documents or tangible things which refer to or relate in any way to plaintiff's credit card activity for the period of January 1, 1990 to present, including, but not limited to, credit card statements, credit card bills and credit card receipt....

Plaintiffs objected to the discovery of their checkbook registers and bank statements because this request was "overbroad, burdensome, violative of [their] privacy, not reasonably related to the discovery of relevant evidence but rather to harass plaintiff[s]." Plaintiffs claimed that the request for credit card bills, receipts, and statements was "overbroad, burdensome and lacking in sufficient specificity."

By letter dated April 2, 1992, defendant informed plaintiffs that the objections were "unfounded" as plaintiffs had alleged that the emotional distress they suffered as a result of the termination had interfered with their normal life activities and the requested documents would provide "an objective measure of whether plaintiff[s] suffered emotional distress so as to interfere with [their] normal life activities."

Plaintiffs repeated their previous objections to producing their checkbook registers, bank statements and credit card bills and receipts. They wrote the following response:

Defendant has completely misapplied the law in the State of New Jersey. The law against discrimination was specifically amended to provide for damages for emotional *stress* in the amendments of 1991. [Plaintiffs' counsel] participated in drafting those amendments and [is] very familiar with the committee reports relating to same. Those amendments were interpreted in a case called *Rathemacher v. IBM* in which the Court found that not only is it unnecessary to provide medical evidence of emotional stress damages, but that a plaintiff's testimony is enough to support such claim. See, also *Levinson v. Prentice-Hall.* It is clear that this Demand is designed to harass plaintiff[s] and violate [their] right to privacy in order to make this litigation as unpleasant as possible. Plaintiff[s] will testify at [their] deposition about the extent of [their] emotional stress and those damages. If during his deposition, he indicates specific areas of his life that have been interfered with, I will reconsider your discovery request specifically related to those claims. My client[s] have indicated to me, however, that although [they] have experienced significant distress, that distress has not interfered with his ability to pay his bills, write checks, use his credit card or seek other employment. Not making a claim that those three areas have been affected, you are clearly not entitled to that discovery, even based on your one 1989 federal district court case.

At his deposition in September 1992, plaintiff Harmon testified that since his employment with defendant was terminated, his lifestyle had changed and that his recreational activities had been curbed "[v]ery drastically." Plaintiff Harmon also claimed that because of the termination, he had trouble sleeping and he "didn't eat well."

In his October 1992 deposition, plaintiff Filler testified that after termination, he didn't sleep through the entire night anymore, he experienced a "shortness in temper," and that he had begun to eat more since termination and had gained approximately ten pounds. When asked whether his emotional harm resulting from his termination caused a change in lifestyle, Filler responded that it "[d]iminished with lack of funds." In regard to how his recreational activities had changed, he testified that he was no longer able to play as much golf because he "did not have the finances" and because it had been difficult to concentrate. Also, the termination resulted in less travelling because of "the financial end of it" and because the desire was not there.

Similar to the other two plaintiffs, plaintiff Gargano testified at his deposition of January 1993 that the termination caused him to "cut[ ] back on [his] lifestyle." He described this "cut back" as follows:

> You're now walking through a supermarket and counting the change in your pocket, or whatever, saying I can't afford these extras. Now, all of a sudden constantly juggling your finances and your bills, and all that. I mean you're carrying that with you all the time during the 13–month period.

On appeal, plaintiffs argue that the Law Division's order would "force disclosure of plaintiffs' private financial matters without any clear showing of good cause and/or compelling need . . .," and "would only serve to harass these plaintiffs and to discourage others [from filing suit]." Plaintiffs also argue that the discovery order "is clearly contrary to the public policy embodied in the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5–1 *et seq.* . . ."

The scope of discovery as set forth in the New Jersey Court Rules must be "construed liberally, for the search for truth in aid of justice is paramount." *Myers v. St. Francis Hospital,* 91

*N.J.Super.* 377, 385, 220 *A.*2d 693 (App.Div.1966). *Rule* 4:10–2(a), in pertinent part, provides as follows:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence; nor is it ground for objection that the examining party has knowledge of the matters as to which discovery is sought.

Our courts have consistently held that pretrial discovery should be accorded the broadest possible latitude. *See, e.g., Jenkins v. Rainner,* 69 *N.J.* 50, 56, 350 *A.*2d 473 (1976); *In re Selser,* 15 *N.J.* 393, 405, 105 *A.*2d 395 (1954); *Blumberg v. Dornbusch,* 139 *N.J.Super.* 433, 437, 354 *A.*2d 351 (App.Div.1976); *Myers, supra,* 91 *N.J.Super.* at 385, 220 *A.*2d 693; *Rogotzki v. Schept,* 91 *N.J.Super.* 135, 146, 219 *A.*2d 426 (App.Div.1966); *Interchemical Corp. v. Uncas Printing & Finishing Co., Inc.,* 39 *N.J.Super.* 318, 325, 120 *A.*2d 880 (App.Div.1956); *Martin v. Educational Testing Serv., Inc.,* 179 *N.J.Super.* 317, 327, 431 *A.*2d 868 (Ch.Div.1981).

Even taking this liberal view of the scope of discovery, we are convinced that, on balance, the circumstances in the present case do not warrant discovery of plaintiffs' checking and banking statements, or credit card receipts and bills. Less invasive means of obtaining facts to test objectively plaintiffs' allegations of harm appear to be adequate. The intrusions defendant seeks into the personal records and documents of the plaintiffs are, on balance, unwarranted.

Plaintiff Harmon testified at his deposition that his recreational activities had changed "very drastically." Plaintiff Filler claimed that his lifestyle had "diminished with lack of funds," and that he was no longer able to play golf as frequently and was forced to travel less because of the "financial end of it. . . ." Plaintiff Gargano testified that the termination caused him to "cut[ ] back on [his] lifestyle," that he could not afford "extras," and that he

had to juggle his finances and bills. Each of these allegations could have been examined in close detail when plaintiffs' depositions were taken. The specific activities referred to could then have been independently investigated on defendant's behalf. Where required to aid the investigation as to specific matters, authorization for release of information could be obtained from plaintiffs. Because of the scope of the present order, many personal unrelated matters would be open to scrutiny without sufficient cause. If plaintiffs are compelled to hand over the records of their banking and credit card transactions, their entire personal lives are open to scrutiny. We find, in these circumstances, that such broad and unfocused inquiry is not necessary and that less intrusive inquiries directed to the particular aspects of diminished recreational activity which defendant wishes to explore would better serve the interest of justice.

In *Ullmann v. Hartford Fire Ins. Co.,* 87 *N.J.Super.* 409, 413, 209 *A.*2d 651 (App.Div.1965), plaintiffs made a claim under a windstorm policy for damage allegedly resulting from a storm. Defendant, Hartford Fire Insurance Company, denied that the damage was due to an insured risk. *Ibid.* On defendant's motion, the trial court ordered plaintiffs to produce their federal tax returns for a two-year period. *Ibid.* Apparently, defendant sought to discover whether plaintiffs claimed the loss was not by windstorm in order to receive credit against their taxes. *Id.* at 416, 209 *A.*2d 651. On appeal, we recognized that "[i]t is impossible to lay down a universal definition of good cause for disclosure and inspection [of financial records], or an all-inclusive and definitive catalogue of all circumstances to be considered by a court in determining whether there is good cause." *Id.* at 414, 209 *A.*2d 651.

In reversing, we stated that "[e]ach case must be decided upon its own facts." *Ibid.* Quoting from *Cooper v. Hallgarten & Co.,* 34 *F.R.D.* 482, 483–84 (S.D.N.Y.1964), we set down the rule that "the production of tax returns should not be ordered unless it clearly appears they are relevant to the subject matter of the

action or to the issues raised thereunder, and further, that there is a compelling need therefore because the information contained therein is not otherwise readily obtainable." *Ullmann, supra,* 87 *N.J.Super.* at 415, 209 *A.*2d 651.

In *Herman v. Sunshine Chemical Specialties, Inc.,* 133 *N.J.* 329, 343, 627 *A.*2d 1081 (1993), our Supreme Court, while considering the question of limitations on discovery in claims for punitive damages, recognized the need to give "regard to a [party's] interest in maintaining the confidentiality of information about its financial status." In *DeMasi v. Weiss,* 669 *F.*2d 114, 120 (3d Cir.1982), it was suggested that there may even be a constitutional right to privacy which applies to a person's financial records and tax returns.

We do not mean to imply that the privacy interest involved here rises to a level that wholly bars discovery. Rather, we hold that on these facts the privacy interests presented are of sufficient importance to be recognized and protected against such unlimited intrusion. Mere convenience or expediency to the defendant will not establish a need sufficient to overcome the privacy interest presented here.

Also to be given consideration in the present context is the chilling effect an order compelling discovery of plaintiffs' personal records might have on other employees considering filing meritorious discrimination suits. Unwarranted intrusions might frustrate the legislative purpose of the LAD. Plaintiffs, if forced to produce personal documents without adequate need or cause, could be coerced or intimidated into withdrawing allegations of changes in lifestyle brought on by emotional distress resulting from the termination.

Reversed and remanded without prejudice to defendant moving to extend the period of discovery to exercise its rights in accordance with the views expressed herein.