**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2895-17T4

DAVID FISHEL,

     Plaintiff-Respondent,

v.

AMI ROSEN and CARA ROSEN,

     Defendants/Third-Party
     Plaintiffs-Appellants,

v.

COLDWELL BANKER and STUART
ARONOFF,

     Third-Party Defendants-
     Respondents.

_____

          Submitted September 13, 2018 – Decided September 25, 2018

          Before Judges Nugent and Mawla.

          On appeal from Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-0198-17.

          Charles I. Epstein, attorney for appellants (Charles I. Epstein and Christopher J. Koller, on the brief).

Chasan Lamparello Mallon & Cappuzzo, PC, attorneys for respondent David Fishel (Mitchell L. Pascual, of counsel and on the brief; Joseph E. Santanasto, on the brief).

PER CURIAM

This case, at its core, is a Landlord-Tenant dispute. On leave granted, defendants Ami Rosen and Cara Rosen appeal a Law Division order that denied their motion to quash three subpoenas. Plaintiff David Fishel served the subpoenas on out-of-state institutions in an attempt to obtain financial and employment information concerning defendant Ami Rosen.[1] In terse and conclusory handwritten notations on the denial order, some of which are illegible, the trial court ruled the subpoenaed information was relevant to defendants' counterclaim. Failing to discern how, and unable to determine whether the trial court decided the motion under the proper standard, we conclude the court misapplied its discretion. We thus reverse.

The appellate record establishes these facts. Plaintiff owns a house in Englewood, which he leased to defendants in June or July, 2014 for one year.

---

[1] Plaintiff served the subpoenas on three out-of-state institutions. In their motion before the trial court, defendants questioned the propriety of plaintiff issuing New Jersey subpoenas to institutions in other states. Defendants have not raised the issue on this appeal.

2                                                                          A-2895-17T4

The parties extended the lease for a second year. They dispute what happened at the second year's end, plaintiff claiming they verbally agreed to a third one-year term, defendants claiming they remained in the home as month-to-month tenants.

In October 2016, a dispute arose over mold. Defendants alleged the house had mold, a health hazard they learned plaintiff had previously attempted unsuccessfully to remediate, his efforts only concealing the condition. Plaintiff alleged no mold existed when defendants first moved into the house. He claimed the mold developed due to their neglect. Defendants stopped paying rent the same month. Litigation ensued.

Plaintiff commenced an action in the Special Civil Part, Landlord Tenant Section, to evict defendants. Defendants assert that when they sought a habitability hearing, plaintiff responded by filing a Law Division action. Plaintiff filed the latter action in January 2017. Defendants vacated the home the following month.

Plaintiff's amended Law Division complaint has thirteen counts. The counts allege causes of action for breach of contract; breach of the implied covenant of good faith and fair dealing; waste; negligence; unjust enrichment; intentional conduct; a book account, tortious interference with prospective

A-2895-17T4

economic advantage; injurious falsehood & tortious property disparagement; prima facie tort; and malicious abuse of legal process. Two other counts are entitled "Attorney's Fees and Costs" and "Punitive Damages."

Defendants' amended responsive pleading includes twelve affirmative defenses, a seven-count counterclaim, and a third-party complaint. The counterclaim includes two counts alleging fraudulent concealment and four counts alleging breach of the warranty of habitability, gross negligence and reckless and wanton conduct, intentional and knowing misconduct, and constructive eviction. The counterclaim also alleges a count for "Attorney's Fees and Costs."

During the course of discovery, plaintiff served subpoenas on three out-of-state financial institutions, one each in New York, Pennsylvania, and Rhode Island. Two were subpoenas ad testificandum, the other a subpoena duces tecum.

Each subpoena ad testificandum directed the institution to produce a corporate representative "to appear and give testimony" at plaintiff counsel's law office in New Jersey "in connection" with the institution's employment of defendant Ami Rosen, "including but not limited to" three enumerated topics. The topics were salary and other compensation during defendant Ami Rosen's

employment; complaints made against him in connection with his employment, "ethical or otherwise, to any oversight commissions or boards"; and, complaints made against him in connection with his employment, "ethical or otherwise," to "any court of law or administrative body." The subpoenas also directed the recipients to produce a copy of defendant Ami Rosen's resume.

The subpoena duces tecum directed the institution to appear at plaintiff counsel's office – or mail, but not before the specified date, and not in the event a motion to quash was filed – documents concerning defendants' mortgage application and mortgage on a home they purchased.

Defendants moved to quash the subpoenas. They argued the subpoenas were procedurally defective, sought irrelevant information, and were issued to further both plaintiff's obvious "vendetta" against defendants and his strategy of "'scorched earth' litigation, using [p]laintiff's vastly superior financial resources . . . to cause personal harm," as evidenced by his discovery tactics in general. Defendants noted plaintiff's non-production of a report from "the actual mold remediation company who remediated the premises." Defendants sought attorney's fees and costs.

In response, plaintiff denied defendants' allegations. He claimed he was seeking the financial information on the theory defendants' failure to pay rent

A-2895-17T4

"had nothing to do with the condition of the property, but was instead related to financial difficulty that [d]efendants had in connection with [their] purchase" of an expensive home. Plaintiff insisted the financial information he sought "is very much relevant to my defense against their frivolous counterclaim." Plaintiff argued defendants' mold claim was "a ruse to recover rent money . . . because they could not afford the rent to begin with and their need for what appears to be a [substantial] down payment on the heels of what seems like a [significant] loss on their last house."

The trial court denied defendants' motion to quash the subpoenas. The court filed an order on February 2, 2018. The parties do not dispute that the relevant handwritten explanation on page one of the order states:

> Financial records and employment records including days worked and compensation are relevant as defendants are counterclaimants. Relevant to counterclaim [two, three and four].

The handwritten explanation on page two of the order states:

> The defendants' financial records regarding compensation and work history are clearly relevant as counterclaims are set forth for breach of warranty of habitability (based on alleged mold hazard), gross negligence, intentional misconduct, and fraudulent concealment are claimed. Defendants seek compensatory, incidental and consequential damages and as such have placed their financial and work history subject to discovery as relevant to such claims.

Pursuant to court rule these records may be redacted for personal identifiers (social security numbers, bank account numbers, etc.).

Counsel should consider mediation of this action.

On appeal, defendants argue the trial court abused its discretion by not granting their motion to quash the subpoenas and issue a protective order. They also contend the court should have at least arranged to review the information in camera, and if necessary, limit the scope of disclosure. Defendants also argue the court erred by denying their application for counsel fees and costs.

Plaintiff responds defendants have failed to overcome the presumption in favor of discovery. He "maintains that [d]efendants' mold claims were simply a pretext, designed to mask their inability to afford the rental expense that accompanied their tenancy . . . and moreover insulate them from damages running from their breach of the lease." Plaintiff also argues defendants' financial condition is relevant to his punitive damages claim.

Generally, parties may discover non-privileged information "which is relevant to the subject matter involved in the pending action." R. 4:10-2(a). If the discovery requests are "reasonably calculated to lead to the discovery of admissible evidence," an opponent's objection that the information will be inadmissible at trial is unavailing. Ibid. Nonetheless, "the scope of discovery

A-2895-17T4

is not infinite." K.S. v. ABC Prof'l Corp., 330 N.J. Super. 288, 291 (App. Div. 2000). "Discovery is intended to lead to facts supporting or opposing an asserted legal theory; it is not designed to lead to formulation of a legal theory." Camden Cty. Energy Recovery Assocs. v. N.J. Dept. of Envtl. Prot., 320 N.J. Super. 59, 64 (App. Div. 1999), aff'd o.b., 170 N.J. 246 (2001).

Our Supreme Court has explained that "[t]empering the normal rule favoring wide discovery of relevant issues is a regard for the defendant's interest in maintaining the confidentiality of information about its financial status." Herman v. Sunshine Chem. Specialties, 133 N.J. 329, 343 (1993). Similarly, we have held that "[i]f disclosure [of tax returns] will not serve a substantial purpose it should not be ordered at all." Ullmann v. Hartford Fire Ins. Co., 87 N.J. Super. 409, 415-16 (App. Div. 1965). Moreover, "[i]f ordered, disclosure should be no greater than justice requires . . . and in all but the clearest cases the return should be examined by the judge before any disclosure is ordered." Id. at 416; see also Campione v. Soden, 150 N.J. 163, 189-91 (1997) (discussing the "strong need" or "good cause" standard for discovery of tax return information).

A trial court should not compel disclosure of financial information merely because a party has asserted a punitive damages claim. The party asserting a punitive damage claim must establish "proof of a prima facie case as a condition

precedent to discovery of a defendant's financial condition[.]" Herman, 133 N.J. at 346.

Here, the trial court did not engage in the "[s]ensitive balancing . . . essential to the accommodation of a plaintiff's need for discovery and the defendant's right to maintain the confidentiality of information about its financial condition." Id. at 344. Plaintiff's subpoenas were not "reasonably calculated" to lead to relevant evidence. He was attempting to find evidence that would help him formulate a theory or motive. Stated differently, he was on a fishing expedition. Plaintiff offered no facts – only unsupported assertions – for his theory defendants were so financially stressed they fabricated their mold complaint to avoid paying rent or to have money to put toward a down payment on an expensive home. In contrast, the record reflects defendants paid their rent for more than two years until they discovered the mold.

Moreover, we fail to discern how defendants' financial condition makes more or less likely a fact of consequence to the determination of the action. The trial court has not explained its decision to the contrary.

The trial court thought defendants' financial condition was somehow relevant to three counts of their counterclaim, but did not explain how. There was either mold in the house or there was not, and if defendants' assertion about

the report plaintiff allegedly withheld is true, there was. Defendants' financial condition did not affect the existence or non-existence of the mold, plaintiff's conduct in concealing or not concealing the mold, or defendant's negligence or willful misconduct. Besides, plaintiff sought more than financial information; he sought information about defendant's job performance as well as a resume.

Nor is any party currently entitled to discover another's financial information based on a punitive damage claim. No one has established a prima facie case for punitive damages.

We find no abuse of discretion in the trial court's decision to deny defendants counsel fees. Although this record suggests one or more parties has filed unnecessary pleadings and engaged in abusive discovery, we have neither the trial court's insight nor its feel for the case. For that reason, we reverse the part of the order denying the motion to quash plaintiff's three subpoenas, but we affirm the part of the order denying counsel fees.

We recommend the trial court conduct a case management conference to streamline additional discovery, establish dates for dispositive motions, and if necessary, enter appropriate protective orders.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2895-17T4