NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2639-20

CHARLES J. PARKINSON,

    Plaintiff-Respondent,

v.

DIAMOND CHEMICAL
COMPANY, INC.,

    Defendant-Appellant,

and

HAROLD DIAMOND,
individually,

    Defendant.

_____

> **APPROVED FOR PUBLICATION**
>
> **October 27, 2021**
>
> **APPELLATE DIVISION**

Argued October 12, 2021 – Decided October 27, 2021

Before Judges Sabatino, Rothstadt and Mayer.

On appeal from an interlocutory order of the Superior
Court of New Jersey, Law Division, Union County,
Docket No. L-1341-18.

Lauren M. Paxton argued the cause for appellant
(Calcagni & Kanefsky, LLP, attorneys; Lauren M.
Paxton, of counsel and on the briefs; Gianna A. Bove,
on the briefs).

Susan L. Swatski argued the cause for respondent (Hill Wallack LLP, attorneys; Susan L. Swatski, of counsel and on the brief; Joshua Heines, on the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

Tax returns are declared confidential by both federal and New Jersey statutes. Disclosure of tax returns and associated tax filings is permitted only in limited circumstances in the absence of waiver or consent. For decades since this court's seminal opinion in Ullmann v. Hartford Fire Ins. Co., 87 N.J. Super. 409 (App. Div. 1965), our courts have enforced that confidentiality pursuant to a rigorous set of standards. As we held in Ullmann, a civil litigant can only obtain an opposing party's tax filings through discovery by demonstrating to the court the requested documents meet a heightened standard. That standard requires that (1) the filings are relevant to the case; (2) there is a "compelling need" for the documents because the information likely to be contained within them is "not otherwise readily obtainable" from other sources; and (3) disclosure would serve a "substantial purpose." Id. at 415-16.

In this wrongful discharge case, plaintiff sought in discovery the tax filings of his former employer and the president of the company, and the company's financial statements, spanning a multiyear period. Plaintiff

2

contended those records are likely to contain information that could support his affirmative claims, and also may help him defend against defendants' counterclaims alleging he caused the company to sustain large financial losses. Defendants resisted the turnover of those confidential records. Motion practice ensued to resolve the dispute.

As part of his argument for compelling disclosure, plaintiff asserts the tax filings of a business deserve less confidentiality than the filings of an individual taxpayer and the rigorous <u>Ullmann</u> test does not apply to them. The trial court endorsed that principle, although it concluded, in any event, plaintiff satisfied the <u>Ullmann</u> test and ordered the full disclosure of the tax and financial records.

On leave granted, we hold that the tax filings of corporations and other businesses receive the same presumption of confidentiality as individual tax records, and that the <u>Ullmann</u> test applies to them as well. No reported case in the country to our knowledge has adopted a contrary principle.

However, because the trial court did not make sufficient findings applying this heightened standard, we remand this matter for more robust review with such amplified findings. In addition, the court should reconsider whether disclosure of the non-tax financial statements is warranted. For both categories of records, the court shall consider whether full disclosure is warranted or

3

whether partial disclosure with redactions will suffice.  The findings shall be made after the court performs an in camera review of the disputed records.

## I.

The disclosure issues before us arise out of what has been thus far a highly contentious lawsuit and discovery process.  The backdrop is as follows.

Plaintiff Charles J. Parkinson worked as a full-time plant manager at defendant Diamond Chemical Company, Inc. (owned by co-defendant, Harold Diamond) from February 2008 to August 2017, when he was terminated. Diamond Chemical is a "national manufacturer of laundry, ware wash, housekeeping, sanitizing and other institutional and industrial products."  It is a closely-held corporation with about 200 employees, and its shares are not traded on a stock exchange.

In April 2018, Parkinson filed a complaint against Diamond Chemical and Mr. Diamond, alleging he was unlawfully terminated because of his age (sixty years old at the time of discharge) and perceived disability, in violation of the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1 through 10:5-42.  The complaint sought both compensatory and punitive damages.

In answering the complaint, defendants denied most of the allegations. Their main asserted defense was that plaintiff was fired for "legitimate, non-

A-2639-20

discriminatory reasons." In objecting to plaintiff's interrogatories, defendants asserted that plaintiff was fired in August 2017 because his "performance had been subpar for some period of time and was continuing to deteriorate." They further asserted plaintiff provided "flippant responses" when asked whether his deficient actions were caused by a medical issue, and then they allegedly confirmed that no such medical cause existed.

Eventually, defendants pled counterclaims against plaintiff. The counterclaims alleged plaintiff wrongfully caused harm to the company in two ways. First, they claim plaintiff allowed his plant to manufacture defective products, despite knowing that a quality control machine to test those products was not working. This allegedly caused an important Diamond Chemical customer to lose an estimated $400,000 or more in sales.[1] Defendants further contend in this regard that plaintiff was inattentive to his duties, inexplicably did not report to work for a ten-day period, evaded attempts by his superiors to speak with him, and lied to them that his phone was not working. Second, defendants claim plaintiff breached his contractual obligations by providing

---

[1] Defendants project that this $400,000 figure, based upon a monthly estimate, should be increased to $600,000. They have not explained precisely how their customer's own loss of sales consequently harmed Diamond Chemical, but we will accept that premise of harm for the purpose of our analysis.

5

services to a Diamond Chemical competitor within several months of his termination, and that he improperly solicited and misappropriated confidential information from his former co-workers.

Plaintiff has denied these counterclaim allegations. He also disputes that his actions and inactions caused the company any financial harm.

With this context in mind, we turn to plaintiff's discovery requests. At the center of this appeal is plaintiff's Document Request #20:

> Provide copies of <u>financial statements and/or income tax returns</u> of each named Defendant for three calendar or fiscal years, including the year of the dates of occurrences described in the Complaint, the prior year, and the subsequent year.[2]
>
> [(Emphasis added).]

Through their counsel, defendants repeatedly objected to this request. Among other things, they maintained that the sought-after tax records and financial records "have zero relevance to any of the substantive claims or defenses in this lawsuit." They asserted the tax records, in particular, are clothed with a presumption of confidentiality, and that plaintiff has failed to show

---

[2] These years are: 2016, 2017, and 2018. The trial court ultimately also ordered discovery of the records for a fourth year, 2019.

relevance and a compelling need for them under the heightened Ullmann standard.

As for the non-tax financial statements, defendants similarly asserted they contain nothing relevant to this case, and that those commercially sensitive internal records deserve protection from disclosure under the balancing test set forth in Herman v. Sunshine Chemical Specialties, Inc., 133 N.J. 329, 346 (1993).

Defendants further argued their financial condition is not germane unless and until a jury finds liability and is then asked to consider whether to award punitive damages. Hence, any disclosure of the tax records and financial statements at this time is premature.

Plaintiff, meanwhile, argued the tax filings and financial statements, although he has not seen them yet, are likely to contain highly relevant information that could both support his affirmative claims and contest defendants' counterclaims. In essence, he argues the records could show he was a proficient plant manager at Diamond Chemical, and that the company's assertions that he caused it to lose money are unfounded, exaggerated, and a pretext for discrimination.

A-2639-20

After considering the parties' arguments, the trial court issued an oral ruling on March 19, 2021. Among other things, the court found:

> . . . [G]iven the fact that the defendant has a counterclaim claiming that the actions of the plaintiff had a – had a negative impact on the business, the Court finds that there is a compelling need for the tax returns.
> The Court finds that the compelling need, however, is only for the tax returns of Diamond Chemical, not the tax returns of Mr. Diamond individually. The Court will order that tax returns for the years – the corporate tax returns for -- for the years 2016, 2017, 2018, and 2019 be produced.
>
> [(Emphasis added).]

The court also ordered the production and on-site inspection of the company's financial records for the same years. The court rejected defendants' request for a protective order disallowing this discovery, finding no "good cause" to justify that relief.

Diamond Chemical did not comply with the order compelling disclosure. Instead, it moved for a stay of the order, which the trial court denied on May 14, 2021 in an oral opinion after hearing further argument. During that May 14 proceeding, the court observed:

> In addition, the heightened good cause standard [of Ullmann] applies only to individuals, not for corporations. Even assuming arguendo that the heightened good cause standard applies, this Court finds that it properly applied the burden of proof in this

case on plaintiff to establish compelling need for the tax returns and financial records as indicated.

This interlocutory appeal by Diamond Chemical ensued. It argues the court erred by shifting the burden to the company to justify non-disclosure, and that the court's terse findings are inadequate to satisfy Ullmann's heightened standard of relevance and compelling need. In addition, the court erred in its assessment of the discoverability of the financial records. The company further maintains the court should not have ordered the full disclosure of the records without reviewing them first in camera.

## II.

The Internal Revenue Code declares that federal tax returns and associated tax return information "shall be confidential," subject to certain specified exceptions. See 26 U.S.C. § 6103(a).

The Code broadly defines the term "return" to encompass "any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary [of the Treasury] by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed." 26 U.S.C. § 6103(b)(1) (emphasis added). In addition, "return information"

9

includes, among other things, "a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing. . . ." 26 U.S.C. § 6103(b)(2)(A).

As explained by United States District Judge John Sirica in Payne v. Howard, 75 F.R.D. 465, 469 (D.D.C. 1977), "[f]ederal income tax returns are confidential communications between the taxpayer and the government." The Code's confidentiality provisions "insure that tax returns are protected from unauthorized disclosure while in the hands of government officials." Ibid. Judge Sirica elaborated:

> The reason for this protection is straightforward. Unless taxpayers are assured that the personal information contained in their tax returns will be kept confidential, they likely will be discouraged from reporting all of their taxable income to the detriment of the government. The opposite is also true. Unless confidentiality is guaranteed, taxpayers will likely refrain from using all of the tax-saving measures to which they are lawfully entitled.
>
> [Ibid.]

The Code does allow disclosure of tax returns to persons having a "material interest," as listed in eleven subparts of subsection (e). 26 U.S.C. § 6103(e)(1) - (11). Persons who have a material interest in an individual's tax return include that taxpayer, the taxpayer's spouse, and the taxpayer's child, under certain circumstances. 26 U.S.C. § 6103(e)(1)(A)(i)-(iii). As for disclosure of the tax returns "of a corporation or subsidiary thereof," persons with a material interest are defined by the Code to include persons designated by the board of directors and shareholders owning one percent or more of the company's stock. 26 U.S.C. § 6103(e)(1)(D)(i), (iii). Additionally, officers and employees can access the corporation's or subsidiary's tax returns "upon written request signed by any principal officer and attested to by the secretary or other officer." 26 U.S.C. § 6103(e)(1)(D)(ii).[3]

The Code does not explicitly state that courts presiding over civil litigation may order the release of otherwise confidential tax returns and return information. However, case law has interpreted the Code to authorize such disclosure when mandated by appropriate court orders. <u>See, e.g.</u>, <u>Payne v.</u>

---

[3] Parkinson does not fit within any of these statutory categories defining persons with a "material interest" in a corporation's tax returns. Nor do any of the exceptions set forth in the other subsections of the Code appear to pertain to him.

A-2639-20

Howard, 75 F.R.D. at 469-70 (recognizing such authority to release tax information, provided that courts do not violate the "general federal policy against indiscriminate disclosure").  Some federal circuit courts have held that litigants waive the statutory protection of confidentiality by placing their income or other financial matters "in issue" in a case.  Ibid. (citations omitted).  Other circuits, like the Third Circuit, require courts to balance the requesting party's "need for the information, its materiality, and its relevance" against the taxpayer's privacy interests.  Id. at 470;  see also DeMasi v. Weiss, 669 F.2d 114, 120 (3d Cir. 1982) (noting the importance of the taxpayers' confidentiality in tax returns and applying the same balancing test to stay a portion of a discovery order mandating disclosure of ten individual defendants' and ninety-seven non-party witnesses' gross incomes from their medical practices).

New Jersey's laws similarly treat state tax filings as presumptively confidential.   N.J.S.A. 54:50-8(a).  The statute commands that, unless an exception applies, "[t]he records and files of the director respecting the administration of the State Uniform Tax Procedure Law or of any State tax law shall be considered confidential and privileged . . . ."  Ibid. (Emphasis added). The statute directs that "neither the [D]irector [of the Division of Taxation] nor any employee engaged in the administration thereof or charged with the custody

of any such records or files, nor any former officer or employee, nor any person who may have secured information therefrom under [various exceptions listed in N.J.S.A. 54:50-9] or any other provision of State law, shall divulge, disclose, use for their own personal advantage, or examine for any reason other than a reason necessitated by the performance of official duties any information obtained from the said records or files or from any examination or inspection of the premises or property of any person." Ibid. (Emphasis added). The New Jersey "Taxpayers' Bill of Rights," N.J.S.A. 54:48-6, reinforces this policy, by requiring the Director to issue statements that convey to the Division of Taxation, among other things, its "obligations of explanation, communication and confidentiality." (Emphasis added). Pursuant to N.J.S.A. 54:50-27, state tax reports are not classified as "public records" subject to release under the Open Public Records Act, N.J.S.A. 47:1A-1 to -13.

Like their federal counterpart, New Jersey's tax statutes enumerate a list of exceptions to confidentiality. The exceptions allow disclosure of tax filings to other governmental agencies, N.J.S.A. 54:50-9, and also permit disclosure in the context of the purchase, transfer, or assignment of tax certificates of debt,

13

N.J.S.A. 54:50-32.[4] Although these statutory exceptions do not mention court-ordered disclosure, our case law has long recognized a trial court's authority, upon an appropriate showing, to compel taxpayers to provide adversaries with access to their tax filings for their use in civil litigation.

Long ago this court delineated these disclosure standards in the oft-cited case Ullmann v. Hartford Fire Ins. Co., 87 N.J. Super. 409 (App. Div. 1965). Ullmann involved an insurance coverage dispute involving multiple plaintiff homeowners. Id. at 412-13. The defendant insurance company sought from the homeowners copies of two years of their tax returns. Ibid. The insurer sought those tax records to prove that the losses the homeowners suffered were not from a windstorm—which would be covered by the insurance policy—but from some other source, and also that they suffered less extensive damage than they had reported. Id. at 413, 417. The homeowners opposed disclosure, asserting that their tax returns were confidential. Id. at 413. The trial court in Ullmann ordered disclosure, adopting the insurer's argument that it had shown "good cause" to obtain the records. Id. at 414.

---

[4]  Again, it does not appear that Parkinson fits any of the state statutory exceptions for disclosure.

On appeal in <u>Ullmann</u>, this court reversed the trial court's disclosure order in an instructive opinion authored by Judge Gaulkin. We adopted a specialized conception of good cause that recognizes the presumptive confidentiality of tax filings. As Judge Gaulkin wrote:

> The average taxpayer is sensitive about his return and wishes to keep it from publication. He is entitled to that privacy unless there is <u>strong need</u> to invade it. <u>If disclosure will not serve a substantial purpose it should not be ordered at all. If ordered, disclosure should be no greater than justice requires. The disclosure of entire returns should never be ordered if partial disclosure will suffice, and in all but the clearest cases the return should be examined by the judge before any disclosure is ordered.</u> Even then the judge should impose such restrictions and limitations as may be necessary for the protection of the taxpayer.
>
> [<u>Id.</u> at 415-16 (citations omitted) (emphasis added).]

<u>Ullmann</u> cited and reaffirmed observations in previous reported cases that required a demonstration of relevance and a "compelling need" for disclosure of tax records. <u>See, e.g.</u>, <u>Cooper v. Hallgarten & Co.</u>, 34 F.R.D. 482, 483-84 (S.D.N.Y. 1964) ("[T]he production of tax returns should not be ordered unless it clearly appears they are relevant to the subject matter of the action or to the issues raised thereunder, and further, that there is a compelling need therefor because the information contained therein is not otherwise readily obtainable."). Echoing these principles, <u>Ullmann</u> instructed that "[g]ood cause for the

15

production of income tax returns is <u>not shown when the movant has the</u> <u>information sought or can obtain it with little difficulty through other methods</u>." <u>Id.</u> at 415 (emphasis added).

<u>Ullmann</u> also noted the sufficiency of the need depends upon the circumstances, and that "[e]ach case must be decided upon its own facts." <u>Id.</u> at 414. The consideration of "practical consequences" should play a "leading role" in the analysis. <u>Id.</u> at 415.

Boiled down to its essence, <u>Ullmann</u> requires a demonstration of three things by a requestor of an opponent's tax records in civil litigation: (1) the records are likely to contain information relevant to the claims or defenses in the case; (2) the requestor has a "compelling need" for the records to obtain information that cannot be obtained readily from other sources; and (3) disclosure of the records will serve a "substantial purpose."

In addition to these burdens placed on the requestor, <u>Ullmann</u> prescribes that trial judges generally should not order the release of tax filings without first performing in camera review and considering whether partial disclosure of redacted records will suffice.

In the ensuing five decades since <u>Ullmann</u> was decided, the opinion has withstood the test of time. We need not catalogue here the many published cases

16

from our courts and the courts of other states that have cited it, let alone countless unpublished decisions applying it regularly. Most recently, we applied Ullmann in affirming a trial court's finding of compelling need to turn over tax returns of two defendants in a civil case. Premier Physician Network, LLC v. Maro, 468 N.J. Super. 182, 195-97 (App. Div. 2021). The wisdom of the Ullmann opinion, part of the pantheon of New Jersey law, remains eminently clear.

Plaintiff presents in this case a novel argument that the heightened standard of Ullmann only applies to individual tax returns and does not apply to the tax returns of corporations and other businesses. We reject that argument for several reasons.

First, as we have noted above, the language of the confidentiality provisions within the Internal Revenue Code and New Jersey's tax statutes makes no distinction between the tax returns of businesses from those of individual taxpayers. The statutes broadly sweep in all tax filings and return information.

Second, plaintiff has not cited a single reported opinion from any jurisdiction that has treated business tax returns as less confidential than those of individual taxpayers. If anything, the few cases on the subject we have

identified through our own research stand for the opposite proposition. See, e.g., Manzella v. Provident Life & Cas. Co., 709 N.Y.S.2d 772 (App. Div. 2000) (applying New York's "overriding necessity" standard to individual tax returns); Four Aces Jewelry Corp. v. Smith, 680 N.Y.S.2d 539 (App. Div. 1998) (applying New York's standard of showing "overriding necessity" to discover corporate tax returns); Schnabel v. Superior Ct., 854 P.2d 1117 (Cal. 1993) (applying same standard in California but noting information identifying non-named parties within corporate tax returns is privileged).

Even more to the point, the Texas Court of Appeals expressly rejected an argument that corporate tax returns should not receive heightened protection as do individual returns. In re Brewer Leasing, Inc., 255 S.W.3d 708, 715 (Tex. App. 2008) ("More importantly, the Texas Supreme Court has never applied a different standard to corporations in its assessment of the probative value of tax returns and the privacy concerns in the release of tax returns."). We are mindful that the circumstances in Ullmann happened to involve the tax returns of

18

individuals, but nothing in that opinion supports the distinction that plaintiff urges us to adopt.[5]

Third, we discern no public policies that should dilute the strong presumption of confidentiality for business tax returns.[6] Business tax returns, particularly the accompanying schedules, conceivably may reveal information about the enterprise that is commercially sensitive. As just a few examples, the tax filings might reveal the company's expenses during the tax year included fees paid to consulting firms that specialize in mergers and acquisitions, or a law firm that routinely represents debtors in bankruptcy matters. Or the tax filings might reveal compensation paid to individual employees who may have a privacy interest in their earnings. Or the filings may reveal that one subsidiary

---

[5] At oral argument before us, plaintiff cited to Capital Health System Inc., v. Horizon Healthcare Services, 230 N.J. 73 (2017). The opinion is inapposite, as it involved access to a hospital's internal proprietary records, not tax returns.

[6] We recognize the parties in this case entered into a mutual confidentiality and protective order for the discovery process, allowing each party to designate items they deem to be confidential and forbidding the opposing party from using that information outside the litigation. That order specifically allows either party to present a confidentiality issue to the court for resolution before disclosure takes place so the turnover dispute before us was not resolved by the terms of that order. Moreover, assuming for sake of discussion the truth of defendants' counterclaim alleging plaintiff misappropriated the company's proprietary information, defendants had a non-frivolous concern about harmful disclosure to present to the court.

or division of the firm is vastly underperforming compared with other units within the firm. The disclosure of this information beyond tax officials to competitors or other persons outside the company could at times be harmful.

We appreciate that larger business enterprises, particularly those that, unlike Diamond Chemical, are publicly traded, may reveal financial information in regulatory filings with the Securities and Exchange Commission and other government agencies. Even so, those filings are not tax filings protected by the confidentiality provisions of the Internal Revenue Code and state tax statutes.

In sum, we hold on this key legal issue that the Ullmann standard of heightened good cause does indeed apply to business tax returns as well as individual tax returns.

Having made this threshold clarification of the governing law, we briefly turn to the trial court's application of Ullmann to Diamond Chemical's tax records. In doing so, we apply a deferential scope of review. See Premier Physician Network, 468 N.J. Super. at 195 (citing Bayer v. Twp. of Union, 414 N.J. Super. 238, 272-73 (App. Div. 2010) ("A [trial] court's discovery rulings should not be reversed on appeal absent an abuse of discretion or a mistaken understanding of the applicable law.")).

Applying that scope of review, we conclude the trial court's abbreviated oral rulings did not adequately analyze the requirements of Ullmann as they pertain to this case and therefore it misapplied its discretion. The oral opinions were unfortunately too conclusory in addressing the questions of relevance and compelling need. The rulings did not mention or analyze the important facet of whether the information within the tax filings could be readily obtained from other sources. Nor did the opinions discuss whether a substantial purpose would be achieved by disclosure.[7]

Most importantly, we note the trial court did not, as Ullmann recommends, examine the tax records in camera to assess whether the records contain relevant information and, if so, whether partial disclosure would suffice. Id. at 416. We were advised by the company's counsel at oral argument that the tax returns themselves are not voluminous, although the schedules are more extensive. We

---

[7] We do agree it is premature for the records to be turned over solely with respect to punitive damages. See Herman v. Sunshine Chemical Specialties, Inc., 133 N.J. 329, 343-44 (1993) (holding that the presentation of financial information to a jury for the purposes of determining the propriety of punitive damage awards must occur in a separate phase of trial from the liability trial, as it could severely prejudice the liability determination).

21

must remand for this important step to be completed.[8]  If the trial court finds the task requires assistance, it may consider appointing a special master or a technical adviser (such as an accountant) to assist it in the process.  See Hammock v. Hoffman-LaRoche, Inc., 142 N.J. 356, 382 (1995) (noting that a trial judge or a special master appointed pursuant to Rule 4:41–1 to –5 may perform in camera review of documents to assess whether they should be disclosed); Alk Assocs., Inc. v. Multimodal Applied Sys., 276 N.J. Super. 310, 318 (App. Div. 1994) (noting the court's power to appoint an independent expert in certain circumstances).

Lastly, we briefly comment on the trial court's rulings to compel the turnover of the company's financial statements.  Unlike tax records, these records are guided by ordinary standards for discovery and protective orders.

---

[8]  We recognize that defense counsel represented to us at oral argument that defendants do not intend to rely on the tax returns to prove their counterclaims. That is not, however, dispositive of plaintiff's own potential need for the records for evidentiary or investigative purposes, either as to his own claims of proper performance and pretext, or his defense of the counterclaims.  The records might be reasonably calculated to lead to the discovery of admissible evidence. Plaintiff is not obligated to accept opposing counsel's representation that the tax records contain no relevant information.  The court's in camera review can confirm whether that characterization is true as to the entire set of records.

As the Supreme Court held in <u>Herman</u>, 133 N.J. at 344-45, a balancing test applies to such internal financial documents:

> <u>Sensitive balancing by the trial court is essential to the accommodation of a plaintiff's need for discovery and the defendant's right to maintain the confidentiality of information about its financial condition</u> . . . . <u>In many cases, a plaintiff can obtain the needed information through the production of documents</u>. For publicly-held corporate defendants, discovery of annual shareholder reports or reports filed with regulatory bodies should not unreasonably invade the defendant's privacy. <u>Certified financial statements of a privately-held corporation may also be discoverable in an appropriate case</u>. Discovery of income tax returns, however, may go too far.
>
> [<u>Id.</u> at 344-45 (emphasis added).]

Our review of the record and the trial court's rulings leads us to conclude that in camera review of Diamond Chemical's financial statements would be beneficial and fairer to both parties. Consequently, we order such in camera review of those non-tax records be undertaken as well. The trial court in its discretion may order defense counsel to submit a privilege log to aid it in the exercise. <u>See</u> <u>Seacoast Builders Corp. v. Rutgers</u>, 358 N.J. Super. 524 (App. Div. 2003).

### III.

23

For all of these reasons, the trial court's orders compelling full disclosure of Diamond Chemical's tax filings and financial statements for the years in question are vacated without prejudice, and remanded in anticipation of in camera review and more detailed findings. We suggest the court convene a case management conference with counsel within thirty days to plan the remand.

Vacated without prejudice and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2639-20